STATE OF NEBRASKA, EX REL. ALFRED A. GRABER, V.
HENRY W. MATLEY ET AL.

1. Mandamus: INTERVENTION BY CITIZENS. An alternative
writ of mandamus was issued to compel the county clerk and
board of canvassers of G. county to re-assemble and canvass the
votes of said county for county seat. The board at once pro-
ceeded to canvass the votes as commanded in the writ, and
made due return thereof. On the return day certain citizens of
that county asked leave to intervene, upon the grounds of col-
lusion and fraud between the relator and defendants. Leave
was granted.

2. ———: CANCELING WRIT AFTER ISSUANCE. The court, during
the term at which it is issued, may, for sufficient cause, cancel an
alternative writ of mandamus and all proceedings thereunder,
where it is made to appear that the writ should not have been
issued.

MANDAMUS. Application to intervene and cancel writ.

*A. M. Robbins* and *Williams & Jenckes*, for intervenors.

*Thurston & Hall* and *E. M. Coffin*, for relator.

MAXWELL, J.

In the month of January, 1885, an election was held in
Garfield county to determine the permanent location of the

county seat of that county. At that time the county was divided into six precincts, named as follows: "Rockford, Willow Springs, Calamus, Dry Cedar, Midvale, and Erina." The towns of Burwell and Willow Springs were the contestants for the county seat. On the 5th day of last February, the defendant Matley called to his assistance the defendants Davis and Brownell as a board of canvassers to canvass the returns of said election. They found that Willow Springs had a majority of seven votes, and it was thereupon declared the county seat. Afterwards the relator applied to this court for a mandamus to compel the board of canvassers to re-assemble and canvass said votes. He alleged in his application that Dry Cedar precinct gave a majority of 15 votes for Willow Springs according to the returns as canvassed: "That no poll book was returned from said precinct of Dry Cedar, nor were any lists returned from said precinct, nor were any ballots, nor was there any evidence of the number of votes which had been cast in said Dry Cedar precinct produced before said board of canvassers. But affiant (the relator) says that certain interested parties produced to said board a certain paper purporting to show what had been done in said Dry Cedar precinct, said paper being a private paper, and without any authentication of any sort whatever. The parties producing said paper stated that it had been handed to them, and while they would not swear to its being a true statement of what the poll book showed, yet they claimed it to be such; that said paper was afterwards taken away by the person who produced it, and cannot now be procured; that said paper, which was so canvassed, was not signed by anybody, nor certified to by any person, nor did it purport to be so signed or certified, nor did it purport to be authenticated in any manner whatever," etc. It is also alleged that this paper was presented to the canvassing board on the sixth day after the election, " and that said board of canvassers proceeded to

canvass said paper, and receive it as showing the votes cast in Dry Cedar precinct, and to count said list as a part of said canvass," etc.   The attorney for the relator merely asked for an order on the defendants to show cause; the court, however, supposing that the affidavit stated all the facts in relation to the canvass of the votes, granted an alternative writ returnable on the 28th of April last.   To the writ thus issued the defendants made return, in substance, that on the 18th day of April, 1885, they received the writ, and in pursuance of its commands they, on the same day, did re-assemble and canvass the votes of Garfield county by excluding the returns from Dry Cedar precinct, thereby giving Burwell a majority of all the votes canvassed. At the return day of the writ, certain citizens of Garfield county made application to intervene in the case, and supported the same with affidavits charging the relator and defendants with collusion in the mandamus proceedings; that the returns from Dry Cedar precinct had been duly made as required by law to Matley, the county clerk, but that on the night preceding the canvass of the votes said returns were stolen from his possession, and that a copy of said returns was thereupon procured from the judge of election having charge of the same, which was the alleged private paper referred to in said writ.   It was also alleged that the relator and one Nelson were interested in a contest of election then pending in favor of the candidate, Burwell, which was pending at the time the application for the mandamus was made, and had not yet proceeded to judgment; and the relator had an adequate remedy at law. An order to show cause why the proceedings in mandamus should not be set aside was then made, and a return made to the order, and affidavits filed, which are conflicting upon many points, but substantially agree upon the facts as above stated, which are all that we deem material.

The first question presented is the right to intervene. The rule is well settled that in matters of mere public

right the people are the real party in interest, and in such cases the wrongful refusal of officers to act is no more the concern of one citizen than another. *People v. Collins*, 19 Wend., 56. *County of Pike v. The State*, 11 Ill., 202. *Rex v. Commissioners*, 1 Term R., 146. Moses on Mandamus, 197–8. In such cases it is sufficient for the relator to show that he is a citizen, and as such is interested in the execution of the laws. *State v. Stearns*, 11 Neb., 104. *State v. Peacock*, 15 Id., 442. *Hall v. The People*, 57 Ill., 313. *State v. Judge*, 7 Iowa, 202. *Hamilton v. The State*, 3 Ind., 458. *The People v. Halsey*, 37 N. Y., 348. *State v. Shropshire*, 4 Neb., 413. And if any citizen may initiate proceedings to secure the enforcement of the laws where the decision upon the relation might affect every citizen in the county, any other citizen certainly has the right to show to the court any fact which would defeat the action. This would have been so had an order to show cause been made instead of issuing an alternative writ, and the fact that the writ was issued does not prevent the court from receiving such an application showing that the writ was issued under a mistaken statement of facts. We therefore hold that the application to intervene was properly made.

Second, It is competent for a court granting even a peremptory writ of mandamus to set it aside if it was obtained by fraud, false representations, or concealment of material facts on the part of the relator. *Everett v. The People*, 1 Caines' Report, 8. *Everett v. People*, Coleman & Caines' Cases, 149. The rule is well settled that a judgment obtained through fraud, accident, or mistake will, in a proper case, be set aside. *Truly v. Wanzer*, 5 How., 141. *David v. Tillston*, 6 Id., 114. *Hendrickson v. Hinckley*, 17 Id., 443. *Marine Ins. Co. v. Hodgson*, 7 Cranch, 332. *Ocean Ins. Co. v. Fields*, 2 Story, 59. *Robinson v. Wheeler*, 51 N. H., 384. *Wingate v. Haywood*, 40 Id., 437. *Emerson v. Udall*, 13 Vt., 477. *Gainty v. Russell*, 40 Conn.,

450.   *Dobson v. Pearce*, 12 N. Y., 156.   *Munn v. Worrall*, 16 Barb., 221.   *Foster v. Wood*, 6 Johns. Ch., 87.
*Tompkins v. Tompkins*, 3 Stockt., 512.   *Wistar v. McManes*, 54 Penn. St., 318.   *Webster v. Skipwith*, 26 Miss.,
341.   *Humphries v. Bartee*, 10 S. & M., 282.   *Pelham v. Moreland*, 11 Ark., 442.   *Nelson v. Rockwell*, 14 Ill.,
375.   *How v. Mortell*, 28 Id., 479.   *New Orleans v. Morris*, 3 Woods, 103.   *Smith v. McLain*, 11 W. Va., 654.
*Shields v. McClung*, 6 Id., 79.   *Crim v. Handley*, 4 Otto,
652.   Pomeroy's Eq., § 1364, and cases cited.   The power
of the court in all such cases is unquestioned.   There are
charges of fraud upon both sides in this case which we deem
it unnecessary to consider, for the reason that the relator
failed to state in his application a material fact well known
to him, viz., that proceedings were then pending to contest
the election.   This court has held that the remedy by contest was not exclusive.   *State v. Stearns*, 11 Neb., 104.
*State v. Peacock*, 15 Id., 442.   And there are many cases
where it is not an adequate remedy, as where on the face
of the returns the relator is entitled to the certificate of
election.   In such case the court will compel the counting
of votes as shown by the returns and the issuing of the
certificate to him who has the apparent right, and he will
not be compelled to appear as contestant to obtain what the
returns show he is entitled to without a contest, viz., the
certificate of election.   He may contest the election, however, instead of proceeding by mandamus, and may have
sufficient cause for doing so, as where illegal votes were
cast for his competitor.   But whatever the cause, having
chosen his remedy he must exhaust that before instituting
other proceedings.   The whole theory of our civil procedure is to avoid a multiplicity of suits, hence the plea
of another action pending between the same parties and for
the same cause of action is a good plea in abatement.   A
proceeding to contest an election is substantially an action,
and as it was pending when this proceeding was instituted

that remedy must be exhausted before relief will be granted in this, otherwise it would be possible for a party to serve notice of contest upon the successful party, and after the time for the adverse party to serve notice had elapsed, dismiss the proceedings and rely upon a mandamus. This case is a proper one for a contest. There is no doubt the returns from Dry Cedar precinct were properly made. The election officers of that precinct are not in fault, but through the neglect of some one the returns were taken away. If the votes returned from that precinct were actually cast by legal voters they should be counted, and this court cannot give its sanction to any proceedings that would disfranchise any portion of the community. But it may be said the defendants have already complied with the command of the writ and canvassed the votes of said county, except Dry Cedar precinct, and that the cancellation of the writ will not affect the result as thus declared. That, however, does not follow. The writ is under the complete control of the court during the term at which it was issued, and it may require the return to be amended or the board to perform their duty more fully. The court acts upon the returns through the board of canvassers, and it is its duty to see that justice is done between the parties so far as the nature of the case will admit of. It is evident that the writ was inadvertently issued, and that justice requires its cancellation. In other words, the court made a mistake in issuing the writ and now corrects the wrong by recalling it and canceling all proceedings thereunder. The writ of mandamus heretofore issued, and all proceedings thereunder, including the canvass of the votes by said defendants, are hereby set aside, annulled, and held for naught, and the case will stand upon the application for a mandamus until the conclusion of the proceedings to contest the election.

JUDGMENT ACCORDINGLY.

THE other judges concur.