WILLIAM C. STEVENS, AUDITOR GENERAL, v. THE LAKE
GEORGE & MUSKEGON RIVER RAILROAD COM-
PANY ET AL.

[See 60 Mich. 591.]

*Railroad companies—Specific taxes—Lien of State—Bill in equity—
Sale of corporate property.*

1. How. Stat. § 1220, authorizes the commencement of a suit in the
name of the Auditor General by the direction of the Attorney
General to enforce the collection of specific taxes assessed by
the Auditor General against a railroad company pursuant to
Joint Resolution No. 3, Laws of 1881, p. 407.

2. At the time of the passage of Act No. 64, Laws of 1848 (How.
Stat. §§ 1223, 1224), giving the State a lien upon the property
of any company incorporated after its passage, and subject to
the payment of a specific tax to the State, to secure such pay-
ment, the Constitution contained no provision requiring the
object of an act to be expressed in the title, and the incorpo-
ration of *said* act in the subsequent revisions and compilations
of our laws did not render it subject to the constitutional pro-
vision of 1850 on that subject, and said act includes *all* corpo-
rations incorporated after its passage.

3. How. Stat. § 3362, gives the State a *paramount* lien upon the
*personal* property of a railroad company for all taxes due from
the company owning or operating the railroad, which lien
attaches upon the filing by the Commissioner of Railroads with
the Auditor General of a computation of the *amount* of such
tax pursuant to How. Stat. § 3358, and is not lost by the fail-
ure of the Auditor General to issue his warrant or commence
suit for the collection of such taxes, his power to do so not
being limited to any specified time.

4. How. Stat. § 3403, authorizing the absolute sale of a railroad,
makes such sale subject to all the obligations and duties pre-
scribed by the general railroad laws of the State, and the
vendee cannot claim to be a *bona fide* purchaser as against the
lien of the State for taxes due from the vendor company.

5. A railroad company and its assignees are entitled to the use and
possession of the corporate property as against the lien of the
State thereon for taxes until the proper officers of the State, by

some of the methods provided by law, have taken steps to reduce it to possession for the purpose of enforcing such lien.

Appeal from Clare.   (Hart, J.)   Argued June 11, 1890. Decided October 10, 1890.

Bill to enforce the payment of specific taxes.   Defendants Hackley and Hume appeal.   Decree modified and affirmed.   The facts are stated in the opinion.

*B. W. Huston,* Attorney General, and *Edward Bacon,* for complainant.

*Smith, Nims, Hoyt & Erwin,* for appellants.

[The points of counsel are fully stated in the opinion.— REPORTER.]

GRANT, J.   The defendant company was organized in 1876, under the general railroad laws of the State, and built and operated its road till November 28, 1881, when it sold and conveyed by warranty deed all its property, except bills receivable, to John L. Woods.   This sale was made to pay a mortgage indebtedness.   January 2, 1882, Woods conveyed the property to C. H. Hackley & Co., who took possession and operated the road until 1883, when they took up and sold the track, and removed portions of the movable property to another road owned by them.   The company made its annual reports for each year to and including 1881.   Specific taxes were assessed against the company for each year based upon these reports.   Such taxes were paid for the years 1877 and 1878, but were not paid for the years 1879, 1880, and 1881.   The Auditor General took no steps to enforce the collection of the taxes against the railroad company.   At the time of the sale the company was evidently insolvent. After the sale to Hackley & Co., the Auditor General

demanded payment of the taxes from them, which was refused. The Auditor General then issued his warrant, and levied on the property purchased by Hackley & Co. This levy was held to be void, and was set aside. *Hackley v. Mack,* 60 Mich. 591. The Court in that case held that the lien of the State, if it existed, could not be enforced by execution until the right had been adjudicated in a court of equity. Decree was entered for complainant for a perpetual injunction, but without prejudice to the State or Auditor General to take any action deemed proper and necessary.

The Auditor General subsequently brought this suit in equity to enforce the lien, praying that the defendants Hackley and Hume, the then owners of the property, might be declared personally liable; that they be decreed to account for the property received; and, in brief, that a proper decree might be entered to enforced the lien. Defendants Hackley and Hume demurred. The demurrer was overruled, and they then answered. Issue was joined, proofs taken, and decree entered for complainant ordering the defendants to pay the taxes, and, in default thereof, that the property should be sold to pay the amount thereof, the sale to be made in the following order:

1. All the stock of the company.
2. All the real estate.
3. The four locomotives formerly belonging to the company and now to Hackley and Hume.
4. All such other movable property formerly belonging to the company and subsequently in control of defendants Hackley and Hume as they shall in writing designate.

Defendants Hackley and Hume appeal.

1. Defendants contest the authority of complainant to file the bill. The statute provides that the Auditor General shall examine, adjust, and settle the claims of all persons indebted to the State. How. Stat. § 275. The Legislature passed a resolution in 1881 (Laws of 1881, p.

407) instructing the Commissioner of Railroads to ascertain what railroad companies had failed to pay the taxes assessable to them, and to compute and report in each case the amount of such deficiency for each year to the Auditor General, who was directed to assess and collect the same in accordance with the provisions of the law. How. Stat. § 1220, provides that, if any incorporated company shall neglect or refuse to pay the tax assessed against it, the State Treasurer shall furnish the name of every such company to the Attorney General, who shall thereupon file a bill in the court of chancery against every such company for the discovery and sequestration of its property. These provisions furnish ample authority for the maintenance of the suit in the name of the Auditor General. The complainant is described in the bill as—

"William C. Stevens, Auditor General of the State of Michigan, by direction of Moses Taggart, Attorney General of the State of Michigan."

Aside from these statutory provisions it is the general rule that public officers need not be expressly authorized by statute to bring suit, but that their capacity to sue is commensurate with their public trusts and duties. *Supervisor v. Stimson* 4 Hill, 136; *Overseers v. Overseers,* 18 Johns. 407; *Todd v. Birdsall,* 1 Cow. 260; *County Treasurer v. Bunbury,* 45 Mich. 84 (7 N. W. Rep. 705). The objection is purely technical, and were it of any force an amendment would be allowed, inasmuch as the bill shows the real party in interest, and defendants have not been surprised or prejudiced. The Attorney General has fully complied with the above provision of the statute by filing the bill in the name of the Auditor General. That provision does not necessarily mean that he should file the bill in his own name. It is fully satisfied when filed by his direction, and with his name subscribed as the Attorney General of the State.

2. It is next insisted that railroad corporations are excluded from the operation of Act No. 64, Laws of 1848, which provides for the institution of the suit in chancery to enforce the lien created by the statute. How. Stat. § 1224. The title of that act is as follows:

"An act relative to specific State taxes on plank-road, mining, and other corporations not enumerated in the Revised Statutes of 1846."

The body of the act provides that—

"In all cases when any incorporated company hereafter to be incorporated is made subject to the payment of a specific State tax, this State shall have a lien on all the property of said company, to secure the payment of said tax, which lien shall take precedence of all other liens or incumbrances whatever."

At the time this act (How. Stat. § 1223) was passed, the Constitution contained no provision requiring the object of the act to be expressed in the title, as does the Constitution of 1850. Formerly no titles were prefixed to the legislative acts, and, except as limited by constitutional provisions, the title cannot control the express words in the body of the act. *Rogers v. Windoes,* 48 Mich. 630 (12 N. W. Rep. 882); *Stewart v. Riopelle,* Id. 178 (12 N. W. Rep. 36); *U. S. v. Palmer,* 3 Wheat. 631; Cooley, Const. Lim. 141. The fact that this act has been incorporated in the subsequent revisions and compilations of our laws, does not render it subject to the constitutional provision of 1850, concerning titles to legislative acts. It follows, therefore, that this act of 1848 included all corporations thereafter to be incorporated. The defendant company was such a corporation, and subject to its provisions.

3. Does the remedy by a suit in chancery exist? The general railroad act of 1873, as amended in 1879, simply imposes the tax, and provides for the lien. It provides

no method of collection. How. Stat. §§ 3358–3362. We must therefore look to other provisions of the statute for the method of collection. How. Stat. § 1293, provides a remedy by distress and sale, and defendants' counsel claim that this is the only remedy provided, but sections 1220 and 1221 expressly provide for a suit in chancery upon the neglect or refusal of the company to pay the tax, while section 1222 provides that the tax may also be recovered from a delinquent company by action in the name of the people. In this case the Auditor General issued his warrant for the collection of the tax, but no property belonging to the defendant corporation could be found. It had sold and transferred the legal title to all it had. No other remedy was therefore left but by suit, as decided in *Hackley v. Mack,* 60 Mich. 591. We think the above statutes are sufficient to authorize this suit.

4. Does the law create a lien upon the engines and other rolling stock of the corporation? How. Stat. § 3362, provides that the State shall have a lien upon all railroads and their appurtenances and stock therein, for all taxes which may accrue to the State from the companies owning or operating the same, and that each citizen of the State shall have a lien upon all the personal property of said company for all penalties, etc., which, *after said lien of the State,* shall take precedence of all other debts, etc. From the phraseology of this section it is clear that the Legislature understood and intended the personal property of the corporation to be included within the description of the property upon which the State had a paramount lien.

5. When did the lien attach, and upon what property? The contention of the defendants is that the lien was a mere floating and general one, and did not attach to any particular property until the commencement of the suit, when the court for the first time, under the statute, had power to sequestrate so much of the property as the court

should deem necessary for the purpose of satisfying the tax, and that an absolute transfer of the property prior to a levy or to the commencement of suit defeats the lien. The language of the statute precludes the adoption of this contention. It includes all, and not a part. The intention was to establish a lien upon all the property, which should at some time attach. The existence of this lien does not prohibit the company from selling its property, part or all. If part were sold, the State would undoubtedly be compelled to first resort to that the title to which remained in the company. The lien provided is similar to a mortgage which in general terms includes all the property of the company. The statute provides that the Commissioner of Railroads shall, on or before the 15th of May of each year, make and file with the Auditor General a computation of the amount of the tax, to be based upon the report of the company the preceding year. The computation for the year 1881 was not reported to the Auditor General until July 24, 1882. No lien could attach until this computation was made and filed. When so made and filed it became a lien just as effectually as judgments do, which, by the law of many states, are made liens upon all the real estate of the judgment debtor. The maxim *caveat emplor* then applies to all purchasers. The property having been sold November 28, 1881, before any computation was or could have been made, no lien for that year attached to the property. The liens for 1879 and 1880 were complete, and had attached prior to the sale.

6. Was the lien of the State lost by the laches of the Auditor General? The statutes provide that, in case any company shall neglect or refuse to pay the tax within 20 days after the same is due, it shall be the duty of the Auditor General to issue his warrant for the levy and collection of the same. How. Stat. §§ 1244–1248. It is

evident that Auditor General Latimer neglected his duty in that regard, but his neglect does not destroy the lien. The warrant can be issued at any time thereafter. There is no presumption of payment. Purchasers of property, upon which the State has a lien, have no right to act upon the presumption that the officers charged with the duty of collection have exhausted all the remedies provided for such collection, and have secured payment. There is no presumption that taxes have been paid any more than that other debts have been paid. No one will contend that the power of the Auditor General to issue his warrant, or to commence suit, was limited to any specified time. The statute nowhere fixes a time for the expiration of the lien, nor within which the Auditor General must act. The State cannot be deprived of its rights by the neglect of its officers where their acts are not made precedent to the creation or continuance of such rights, and no time is specified within which they must act. We quote with approval the language of the court in *Swan v. Mayor*, 11 Humph. 132:

"It would be a violation of principle to hold that a public right shall be lost by the mere delay or neglect of the public agents to enforce it, and in the absence of any law expressly limiting the time in which it may be done." Cooley, Tax'n (2d ed.), 449; *U. S. v. Railway Co.*, 118 U. S. 125 (6 Sup. Ct. Rep. 1008); *Attorney General v. Supervisors*, 30 Mich. 392; *Oceana Co. v. Supervisor*, 48 Id. 320 (12 N. W. Rep. 190).

7. It follows as a natural consequence that the defendants are not in law *bona fide* purchasers. As well might it be contended that one who purchases real estate without an examination of the records in the office of the register of deeds was a *bona fide* purchaser as against a prior recorded mortgage. Every one is presumed to know the law. The statute authorizing the absolute sale of the

railroad expressly provides that it is subject to all the obligations and duties prescribed by the general railroad laws of the State. How. Stat. § 3403. John L. Woods, from his relations to the company, cannot be considered a *bona fide* purchaser either in fact or in law. The appealing defendants, Hackley and Hume, wisely protected themselves in the purchase by a written guaranty from Woods of the title to the property conveyed.

8. The defendant company and its assignees were entitled to the use and possession of the property until the proper officers of the State, by some of the methods provided by law, had taken steps to secure the possession thereof for the purpose of enforcing the lien. Those steps must be regarded as having been taken by the commencement of this suit. It is the duty of the defendants Hackley and Hume to produce the property which formerly belonged to the defendant company, and which came to their possession by virtue of the sale, to be sold by the proper officer under the decree of the court to satisfy the liens for the years 1879 and 1880. Failing to do this they will be held liable for the property destroyed or converted by them.

The decree of the court below will be modified to correspond with the views above expressed. No costs will be allowed to either party.

The other Justices concurred.