Sullins et al., Bd. Co. Com'rs, v. State ex rel. Barnard, Com'r Char. & Cor.

of the overruling of said motion for a new trial. Neither has any summons in error been issued, nor any praecipe for summons in error been filed with the clerk of this court, nor has any waiver of the issuance of such summons in error been made, nor any appearance entered on the part of the defendant in error.

The motion is sustained. *Coleman v. Eaton*, 26 Okla. 858, 110 Pac. 672; *Hartsell v. Edwards*, 29 Okla. 119, 116 Pac. 942; *Simmons v. Lauffer*, 29 Okla. 132, 116 Pac. 943.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.

---

SULLINS *et al., Board of County Com'rs, v.* STATE *ex rel.* BARNARD, *Com'r of Charities and Corrections.*

No. 3484.    Opinion Filed June 20, 1912.

Rehearing Denied September 24, 1912.

(126 Pac. 732.)

1. MANDAMUS—Parties—Commissioner of Charities and Corrections. The right of the Commissioner of Charities and Corrections to bring suit on her own relation, in the name of the state, to mandamus the board of county commissioners to pass upon the qualifications of a probation officer appointed by the county court, and to certify the same back to the county court, if not expressly authorized by constitutional or statutory authority, is fairly inferred, being commensurate with her trust.

2. SAME—Subjects of Relief—Acts of Officers. A board of county commissioners, to whom was referred an appointment by the county court of a person as probation officer, refused to determine whether the proposed appointee was a discreet person of good character and qualified, under an act approved March 24, 1909 (article 8, c. 14, p. 188, Sess. Laws 1909), for the office, but determined that it was inexpedient to confirm said appointment. Held, that said board of county commissioners may be ordered by mandamus to pass upon the qualifications of said officer and certify the same to the county court.

3. MANDAMUS—Proceedings—Quashing Writ. A motion to quash a peremptory writ of mandamus, issued without notice, will be sustained, where the writ was improperly or improvidently granted.

(Syllabus by the Court.)

*Error from District Court, Okmulgee County;*
*Wade S. Stanfield, Judge.*

Mandamus by the State, on the relation of Kate Barnard, as Commissioner of Charities and Corrections, against J. W. Sullins and others, as the Board of County Commissioners of Okmulgee County. Judgment for plaintiff, and defendants bring error. Affirmed.

*J. W. Childers,* Co. Atty., for plaintiff in error.

*Dr. J. H. Stolper,* General Attorney for the Commissioner of Charities and Corrections and Public Defender of the State of Oklahoma, for defendant in error.

TURNER, C. J.   On December 13, 1911, the state of Oklahoma *ex rel.* Kate Barnard, as Commissioner of Charities and Corrections, filed in the district court of Okmulgee county a verified motion in the shape of a petition, wherein J. W. Sullins, Charley Myers, and Thomas Chism, as the board of county commissioners of Okmulgee county, plaintiffs in error, are made parties defendant. The allegations of the petition are made by her attorney, Dr. J. H. Stolper, who, after alleging himself so to be, and that Kate Barnard is the duly elected, qualified, and acting Commissioner of Charities and Corrections for the state of Oklahoma, substantially states that as such Commissioner she has certain duties to perform within the state imposed by law in relation to the dependent, neglected, and delinquent children of each and every county in the state, and the juvenile courts thereof; that by Senate Bill 88, Sess. Laws 1909, the county judges of each county of the state are required to appoint a probation officer, charged with the duty of supervising such children in his county before and after trial, in the event said children are placed on probation in the manner provided by law; that petitioner cannot discharge the duties imposed upon her by law as an executive officer of the state, unless such officer is duly appointed by the court, and that such children are entitled to the benefits, privileges, and protection of such officer in that county; that, pursuant to her duties so imposed, she had thereto-

fore appeared before the judge of the county court and juvenile court in and for said county; that, pursuant thereto, on December 7, 1911, said judge appointed one W. H. Lucas, a discreet person of good moral character, as probation officer for said county; that said appointment was duly certified to the board of county commissioners of said county, and that said board has failed and neglected, and still fails and neglects, to pass upon the qualifications of said Lucas, on the sole ground that it is inexpedient to confirm said appointment; and that, as petitioner is without adequate remedy at law, she prays for a writ of peremptory mandamus, which, without notice, thereupon issued, commanding the said Sullins, Myers, and Chism to meet as a board at the county seat on December 19, 1911, and pass upon the qualifications of said Lucas as probation officer for said county, and to certify to the court within three days the fact of his qualification or disqualification. On December 18, 1911, came the county attorney, specially appearing for the board, and moved the court to quash the writ on certain grounds therein stated, and to dismiss the petition, and, upon the same being overruled, said Sullins, Myers, and Chism, through the county attorney, duly excepted and bring the case here.

If for any reason this writ was improperly or improvidently issued, it should have been quashed. 13 Enc. Pl. & Pr. p. 790; *State v. Madley*, 17 Neb. 564, 24 N. W. 200; *State v. Elkinton et al.*, 30 N. J. Law, 335. There is no merit in the contention that the writ should have been quashed on the ground that relator had no power to bring this suit.

Article 6, sec. 1, of the Constitution, reads:

"The executive authority of the state shall be vested in the Governor * * * Commissioner of Charities and Corrections * * * and other officers provided by law and this Constitution, each of whom shall * * * perform such duties as may be designated in this Constitution or prescribed by law."

Article 6, sec. 27:

"A Commisisoner of Charities and Corrections shall be elected in the same manner, at the same time, and for the same term as shall the Governor. Said officer may be of either sex, and shall be twenty-five years of age or over; in all other respects said

officer shall have the qualifications which shall be required of the Governor."

Section 28:

"The Commissioner of Charities and Corrections shall have the power, and it is hereby made his or her duty, to investigate the entire system of public charities and corrections, to examine into the condition and management of all prisons, jails, almshouses, reformatories, reform and industrial schools, hospitals, infirmaries, dispensaries, orphanages, and all public and private retreats and asylums, which derive their support wholly or in part from the state, or from any county or municipality within the state; and the officers of the various institutions named herein shall promptly, upon demand, furnish the said Commissioner with such information, relating to their respective institutions, as shall be demanded by said Commissioner, in writing. The said Commissioner shall have the power to summons any person to appear and produce such books and papers as shall be designated in the summons, and to give testimony under oath concerning the matter and institution under investigation. The said Commissioner shall have the power to administer oaths to such persons as may be summoned, and to enforce all such powers as are given to notaries public when they are taking depositions. A full report of said investigation, including the testimony, shall be promptly made to the Governor, and shall be transmitted by him to the next Legislature with any suggestions which he may desire to make."

Section 29:

"On the first day of October of each year, and at any time on request of the Governor, the said Commissioner shall make a full and complete report of the operations and administration of said office, with such suggestions as said Commissioner may deem suitable and pertinent."

Section 30:

"The Legislature shall have power to alter, amend, or add to the duties of, or grant additional authority to, such Commissioner."

Defining her duties under these sections is an act, approved March 23, 1908 (Laws 1908, c. 23, art. 1), section 2 of which makes it her duty to visit, inspect, and inquire into the condition and management of all state penal, relief, and correctional institutions, and all eleemosynary institutions, of whatever name or character, at least once a year. Section 3 extends this duty

to the county jails, almshouses, poor farms, pesthouses, and other county penal, correctional, and charitable institutions, and requires that she make recommendations concerning such to the board of county commissioners. Section 4 extends this duty to all city jails, holdovers, hospitals, dispensaries, and all other city penal, correctional, and charitable institutions, and requires her to make recommendations concerning the same to the mayor or the city council. Section 5 makes it her duty, at the request of the Governor, to investigate any state penal, correctional, or eleemosynary institutions against which complaint has been made, vesting her with power to summon witnesses and take testimony under oath; and section 6 makes it her duty to report any such investigation to the Governor. Section 7 extends her power of visitation to all maternity hospitals, retreats, lying-in hospitals, rescue homes, and foundling institutions in the state, and makes it her duty, after inspection and examination, to issue certificates authorizing them to operate for one year from the date thereof, with power to revoke the same upon notice; also makes it her duty to prosecute any violation of law in connection with those institutions. Section 8 makes it her duty to investigate all complaints made upon affidavit, against such institution, and also against all baby farms and orphanages, of whatever name or character, conducted by individuals for private gain, or which either charge for their services, or subsist, in whole or in part, on money collected as charity. This section also gives her power to order such places closed, and to restrain their opening. Section 9 extends her power to the inspection and examination of the methods and records of all orphanages, children's aid, home-finding societies and all other similar organizations, whether incorporated or not, formed for the purpose of adopting into families such foundlings, orphans, and dependent children as come into their hands. Section 10 makes it her duty, on sworn complaint of one or more responsible citizens against any county, city, or private institution, corporation, or other organization named in the act, to investigate, and, upon finding conditions as complained of, she is authorized to order an abatement thereof, and to prosecute the officers of such institution for failure to obey the order.

Section 11 gives her power, in making such investigation, to summon witnesses and compel the production of books and papers, and testimony under oath, and the right to exercise all powers given a notary public when taking depositions. Section 12 makes it her duty to appear as next friend for all minor orphans, dependents, and delinquents, who are inmates of any public institutions maintained and operated by the state, county, city, or municipality, before any court having probate jurisdiction, and ask that a guardian be appointed, when it appears that such children have an interest in property. Section 13 makes it her duty to report annually to the Governor and make duplicate reports to the Legislature.

What is known as the juvenile court bill, approved March 24, 1909 (Sess. Laws 1909, c. 14, art. 8), in section 1, defines a "dependent child" and a "neglected child," also a "delinquent child," and provides that any child committing any of the offenses mentioned in the act shall be deemed a delinquent child, and proceeded with as therein provided. Section 2 provides that the several counties in the state shall have jurisdiction in all cases coming within the provisions of the act, and that in trials thereunder the child informed against, or any one interested in such child, shall have a right to demand a jury, etc. It also provides in all counties for a special record book or books to be kept by the court for all cases coming within the provisions of the act, and that at a certain time in each year the clerk or judge of the juvenile court shall submit to the Commissioner of Charities and Corrections a record in writing, upon blanks to be furnished by her, showing the number and disposition of delinquent children brought before such court, together with such other useful information regarding such cases, etc., as may reasonably be obtained at the trial. Section 5 reads:

"The court shall have authority to appoint, or designate, by and with the consent of the county commissioners, one discreet person of good character to serve as probation officer during the pleasure of the court; said probation officer to receive compensation of fifty dollars per month from county funds, to be paid by county commissioners. In case the probation officer shall be appointed by any court, it shall be the duty of the clerk

of the court, if practicable, to notify the said probation officer in advance when any child is to be brought before the court; it shall be the duty of said probation officer to make such investigation as may be required by the court; to be present in court in order to represent the interests of the child when the case is heard; to furnish to the court such information and assistance as the judge may require; and to take such charge of any child before and after trial as may be directed by the court."

Section 6 provides that when a child under the age of sixteen years shall be found to be dependent or neglected, within the meaning of the act, the court may make an order committing such child to the care of a suitable state institution, or to some responsible citizen, or to some training or industrial school, as provided by law.

It is unnecessary to further review the act, except to say that section 10 reads that the same "shall be liberally construed, to the end that its purpose may be carried out, to wit: That the care and custody and discipline of the child shall approximate, as nearly as may be, that which should be given by its parents. * * *"

Section 2 of an act, approved February 24, 1911 (Laws 1911, c. 25), amending section 12 of the act of March 23, 1908, reads:

"The Commissioner of Charities and Corrections shall have the power, and it shall be his or her duty to appear as 'next friend' for all minor orphans, defectives, dependents and delinquents, who are inmates of any public institution maintained and operated by the state, county, city or municipality, before the county court having probate jurisdiction, and ask that legal guardians be appointed for the estate of such minor orphans, defectives, dependents and delinquents, when it appears that such persons have an interest in some estate, legacy, or property, and shall have such power and authority in any and all litigation where interests of such persons may require to be prosecuted or defended or instituted in any and all courts in this state."

Comment on specific portions of these constitutional and statutory provisions is unnecessary, except to say that the same are a near approach to direct statutory authority to bring this suit. From their scope, it is apparent that their whole intent is to place her, as near as possible, *in loco parentis* to the unfortunate

class with which this opinion deals, and charges her in broad terms to look after their welfare as required by law; and that the duty of securing the appointment of a probation officer, whose duties are in effect to assist her in a manner so to do, is fairly commensurate with her trust.

In *Auditor General v. Railroad Co.,* 82 Mich. 426, 46 N. W. 730, the court said:

"Aside from these statutory provisions, it is the general rule that public officers need not be expressly authorized by statute to bring suit, but that their capacity to sue is commensurate with their public trusts and duties. *Supervisor v. Stimson,* 4 Hill [N. Y.] 136; *Overseers v. Overseers,* 18 Johns. [N. Y.] 407; *Todd v. Birdsall,* 1 Cow. [N. Y.] 260 [13 Am. Dec. 522]; *County Treasurer v. Bunbury,* 45 Mich. 84, 7 N. W. 705."

See *Rouse v. Moore,* 18 Johns. (N. Y.) 407; *Pennoyer v. Wills,* 26 Ore. 1, 36 Pac. 568, 46 Am. St. Rep. 594; 29 Cyc. 1447.

In *Moore v. Nation,* 80 Kan. 672, 103 Pac. 1107, 23 L. R. A. (N. S.) 1115, 18 Ann. Cas. 397, the court said:

"The duties of an office include all of those that fairly lie within its scope; not merely those which are necessarily involved in the accomplishment of the main purpose of the office, but those, also, which, although incidental and collateral, naturally and properly serve to promote and benefit the performance of the principal duties. Constitutions and statutes seldom define with precision the scope of any office."

As in *Homesteaders v. McComb,* 24 Okla. 201, 103 Pac. 691, 20 Ann. Cas. 181, we said, in effect, that the Insurance Commissioner was an executive officer of the state, charged with the duty of executing the laws in force in the state relating to insurance and insurance companies doing business therein, and in *State ex rel. Taylor v. Cockrell,* 27 Okla. 630, 112 Pac. 1000, that the State Examiner and Inspector, being vested by the Constitution with executive power and charged by law with certain duties, could bring an original action in mandamus in this court, upon his own relation, against the Bank Commissioner to compel him to permit the Inspector to examine certain records belonging to an insolvent bank in the hands of said Commissioner, so we will hold here that the Commissioner of Charities and Corrections, being an executive officer of the state, is charged with

the duty of executing all laws in aid of the enforcement of her trust, and had a right to bring this suit.

As in *Board of Commissioners, etc., v. State ex rel. Cobb, County Judge,* 31 Okla. 196, 120 Pac. 913, it is here conceded "there is no controversy between the parties that, in order to effect an appointment by the court of any person as probation officer, such appointment must have the consent of the county commissioners, and that they are authorized to determine whether such proposed appointee is a discreet person of good character and qualified, under the provisions of the act, for the office, and that in determining this fact the commissioners are vested with a discretion and judgment that cannot be controlled by mandamus," and that "the point of controversy between them is whether the county commissioners have authority, in determining whether they shall consent to any appointment made by the county court, to determine the necessity for such an appointment, and to refuse to consent to the appointment upon the ground that there is no need for such officer," the law as there announced governs this cause. And, as there is no merit in the contention that the petition fails to state facts sufficient to invoke the writ, or that the same is not properly verified, the judgment of the trial court is affirmed.

All the Justices concur.