STATE *ex rel.* KENNETH RICHARD BROMELOW

*v.*

JOHN W. DANIEL, *Mayor, Village of Bethlehem, et al.*

(No. 14514)

Decided September 18, 1979.

---

*Benjamin R. Honecker* for relator.

*T. Carroll McCarthy, Jr.,* for respondents.

MILLER, JUSTICE:

In this original mandamus proceeding, a candidate for the office of mayor contends that an eligibility requirement imposed on candidates for the offices of mayor or recorder by the Village of Bethlehem is void. The ordinance requires that such a candidate shall submit written evidence to the village council that he is bondable as a public official by an approved corporate surety company for the sum of $100,000. This written submission must be made 45 days prior to the election.[1]

Although relator Kenneth Richard Bromelow submitted a proper nomination petition, he failed to submit written evidence of his bondability 45 days prior to the election, and therefore the village recorder refused to permit his name to appear on the ballot. This mandamus action was brought to compel the recorder to place his name on the ballot. We hold the bondability requirement to be void.

---

[1]The officers of the Village of Bethlehem are nominated by a signature petition and there is no primary election. Because of the urgency of this matter in relation to the election date, we granted relief by order on May 23, 1979.

In *State ex rel. Piccirillo v. City of Follansbee*, ____ W. Va. ____, 233 S.E.2d 419 (1977), we invalidated both the State statute and a city ordinance which required a $100 property qualification in order to be eligible as a candidate for the office of city council. The holding in *Piccirillo* was based on the Equal Protection Clause, Article III, Section 17 of the West Virginia Constitution, and was predicated on the principle that the right to run for office is fundamental, and consequently the State must demonstrate a compelling interest to justify a statutory restriction on such right.[2]

At our last Term, in *Marra v. Zink*, ____ W. Va. ____, ____ S.E.2d ____ (July 12, 1979) (No. 14040), we considered the validity of a provision in the city charter which set a one-year residency requirement for the office of city council under W. Va. Code, 8-5-11,[3] and formulated a new analytical framework for testing the validity of restrictions on the right to run for municipal office. The single syllabus of *Marra* concluded that qualification requirements for municipal office are principally determined by Article IV, Section 4 of the West Virginia Constitution:

---

[2]Equal protection analysis has been the principal approach to candidacy restrictions in other jurisdictions. *See* Gordon, *The Constitutional Right to Candidacy*, 25 U. Kan. L. Rev. 545 (1977); Note, *Developments in the Law—Elections*, 88 Harv. L. Rev. 1111, 1217-1223 (1975); Note, *Of Interests, Fundamental and Compelling: The Emerging Constitutional Balance*, 57 Boston U. L. Rev. 462 (1977).

[3]W. Va. Code, 8-5-11, is the general legislative grant to municipalities to establish qualifications for municipal offices:

"Subject to the provisions of the Constitution of this State, the provisions of this article, and other applicable provisions of this chapter, any city may by charter provision, and the governing body of any municipality, consistent with the provisions of its charter, if any, may by ordinance, determine and prescribe the officers or positions which are to be filled by election, appointment or employment, the number, method of selection, tenure, qualifications, residency requirements, powers and duties of municipal officers and employees, and the method of filling any vacancies which may occur."

"*W. Va. Const.*, art. 4 § 8 establishes authority for the Legislature to provide by general law for 'terms of office, powers, duties, and compensation of all public officers and agents, and the manner in which they shall be elected . . .'; however, that constitutional section does not provide for the establishment of qualifications for municipal office. *W. Va. Const.*, art. 4 § 4 is the exclusive constitutional authority for the establishment of qualifications for municipal office and any qualification in excess of that provision is unconstitutional by its very terms and under *W. Va. Const.*, art. 3 § 10, art. 3 § 17, and art. 3 § 7."

Essentially, *Marra* mandates that no greater qualification for candidacy to a municipal office can be imposed than the qualification set in Article IV, Section 4 of the West Virginia Constitution, which is that a candidate be a citizen entitled to vote.[4] Becauase of *Marra's* precise applicability to the present case, we do not deem that further discussion of this point is warranted.

The respondents raise several procedural errors which they assert should warrant the dismissal of the action. The first is that a remedy by original mandamus in this Court is not proper, since the relator initially filed a similar mandamus action in the Circuit Court of Ohio County and was denied relief. Consequently, they argue that his remedy should have been by way of an appeal to this Court. While ordinarily we would agree with the respondents, this Court has recognized what may be termed a liberal mandamus procedure in election cases, as expressed in *State ex rel. Maloney v. McCartney,*

---

[4]The full text of Article IV, Section 4, reads:

"No person, except citizens entitled to vote, shall be elected or appointed to any state, county or municipal office; but the governor and judges must have attained the age of thirty, and the attorney general and senators the age of twenty-five yers, at the beginning of their respective terms of service; and must have been citizens of the State for five years next preceding their election or appointment, or be citizens at the time this Constitution goes into operation."

_____ W. Va. _____, 223 S.E.2d 607, 615–16 (1976), *appeal dismissed sub nom. Moore v. McCartney*, 425 U.S. 946, 48 L. Ed. 2d 190, 96 S.Ct. 1689:

> "While this action was technically brought in mandamus, it is not circumscribed by the technical rules which ordinarily govern mandamus in West Virginia. . . . A consistent line of decisions of this Court during the last fifteen years clearly recognizes that the intelligent and meaningful exercise of the franchise requires some method of averting a void or voidable election. Consequently this Court has recognized that some form of proceeding must be available by which interested parties may challenge in advance of a primary or general election the eligibility of questionable candidates in order to assure that elections will not become a mockery . . ."

Among the authorities cited in *Maloney* for the greater flexibility of mandamus in election cases were *State ex rel. Dostert v. Riggleman*, 155 W. Va. 808, 187 S.E.2d 591 (1972); *State ex rel. Brewer v. Wilson*, 151 W. Va. 113, 150 S.E.2d 592 (1966); *State ex rel. Summerfield v. Maxwell*, 148 W. Va. 535, 135 S.E.2d 741 (1964); *State ex rel. Cline v. Hatfield*, 145 W. Va. 611, 116 S.E.2d 703 (1960); *State ex rel. Duke v. O'Brien*, 145 W. Va. 600, 117 S.E.2d 353 (1960). As a corollary to *Maloney's* statement, the principal purpose of the liberalized election mandamus is to provide an expeditious pre-election hearing to resolve eligibility of candidates, so that the voters can exercise their fundamental franchise as to all eligible candidates.

Because we have historically recognized that there is an important public policy interest in determining the qualifications of candidates in advance of an election, we have not held an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case. Relator asserts that he was influenced to apply to the circuit court by Rule XVIII of the Rules of Practice in the Supreme Court of Appeals, which encour-

ages filing in the circuit court,[5] and by his impression that *Piccirillo, supra,* appeared to control the issue. Once the adverse decision was made in the circuit court on May 21, 1979, relator asserts that he was unable to prepare the record on appeal and bring it before this Court in time to permit us to act prior to June 5, 1979, the election date.

Here, the issues involved were purely legal. While it is true that factual testimony was taken in the circuit court, it mainly related to the reasons and standards for obtaining a letter of bondability. These factual issues were collateral to the legal issues which generally govern most election mandamus cases. Had there been a detailed factual dispute so that its resolution would have been necessary to determine the question of mandamus relief, an appeal would have been required.

We conclude, under the circumstances of this case, that the petitioner was not foreclosed from filing his original mandamus in this Court.

Respondents make the further procedural point that the original mandamus petition was not verified, and therefore their motion to dismiss should be granted. Again, we consider this procedural error in light of our liberal election mandamus law. Furthermore, the respondent's answer does not deny the essential facts in the mandamus petition.

---

[5]Rule XVIII, Rules of Practice in the Supreme Court of Appeals: "Original jurisdiction of this court should not be invoked if adequate relief appears to be available in a court of concurrent jurisdiction. If the application might have been lawfully made to a lower court in the first instance, the petition, in addition to the matters required by law to support the application, shall also set forth the circumstances which in the opinion of the applicant render it proper that the writ or rule should issue originally from this court and not from such lower court. If the court finds such circumstances insufficient, the court may on that ground refuse to issue the writ or rule prayed for without prejudice to the presentation thereof to a proper court having jurisdiction. Such refusal, without prejudice, to issue the writ or rule for this reason shall be noted upon the fact of the petition." [W. Va. Code, Vol. 1, App., at 446]

Even in non-election mandamus cases, we have recognized that the verification of a mandamus petition need not be by a person who has actual personal knowledge of the facts set out in the petition, and that an affirmation on information and belief will be sufficient. *State ex rel. United Fuel Gas Co. v. DeBerry*, 130 W. Va. 418, 43 S.E.2d 408 (1947). The United States Supreme Court adopted this position in class action suits under Rule 23(b) of the Federal Rules of Civil Procedure in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 15 L. Ed. 2d 807, 86 S.Ct. 845 (1966), and in so doing stated:

> "If rules of procedure work as they should in an honest and fair judicial system, they not only permit, but should as nearly as possible guarantee that bona fide complaints be carried to an adjudication in the merits. . . ." [383 U.S. at 373, 15 L. Ed. 2d at 814, 86 S.Ct. at 851]

Prior to the advent of the West Virginia Rules of Civil Procedure, all equity pleadings were required to be verified. Rule 11 abolished this practice except in certain designated areas. We do not perceive that any untoward result has flowed from the abandonment of equity verification. As stated in M. Lugar & L. Silverstein, *West Virginia Rules* (1960), at 94:

> "The trend of recent years is to lessen the use of oaths, affidavits, and seals in all sorts of legal matters."

We conclude that the lack of a verification in the factual circumstances of this election mandamus case is not a sufficient basis for its dismissal.

For the reasons stated, the ordinance of the Village of Bethlehem, requiring written evidence of bondability for a candidate for the offices of mayor or recorder, is void, and in accordance with our order of May 23, 1979, a writ of mandamus is awarded.

*Writ awarded.*