DEVON CORPORATION, EASON OIL COMPANY,
AND P & O OIL CORPORATION

*v.*

WALTER N. MILLER, *Director*, WEST VIRGINIA
DEPARTMENT OF MINES, ROBERT L. DODD,
DEPUTY DIRECTOR, WEST VIRGINIA DEPARTMENT
OF MINES, OIL AND GAS DIVISION, AND
THOMAS E. HUZZEY, COMMISSIONER, WEST VIRGINIA
OIL AND GAS CONSERVATION COMMISSION

(No. 14488)

Decided July 9, 1981.

Rehearing Denied Oct. 8, 1981.

*Bowles, McDavid, Graff & Love, Paul N. Bowles and Ricklin Brown* for plaintiffs in error.

*Snyder & Segal and Benjamin N. Snyder, David B. McMahon, Lorie Blackman Howley, Tobias J. Hirshman,* amicus curiae: Oil and Gas Reform, Hallie Mae Johnson, Timothy P. Higgins.

*Chauncey H. Browning,* Attorney General, *Richard L. Earles and James F. Wallington,* Assistant Attorneys General, for defendants in error.

McHUGH, JUSTICE:

This action is before this Court upon the petition of Devon Corporation, Eason Oil Company and P & O Oil Company (hereinafter "petitioners") for an appeal and supersedeas from a final order of the Circuit Court of Kanawha County, West Virginia, upon all stipulations, exhibits and other matters of record, upon the briefs and argument of counsel and upon the brief on behalf of amici curiae.

The petitioners seek review of a final order entered January 16, 1979, of the Circuit Court of Kanawha County by which the petitioners' application for a writ of mandamus was denied. This order further made a part of the record the December 21, 1978, letter memorandum of opinion of the circuit court.

The petitioners are foreign corporations licensed to do business in West Virginia. They are engaged in the exploration, production and sale of oil and natural gas.

During the period in question, the petitioners obtained a leasehold interest in a certain 96 acre tract of land located in Jackson County, West Virginia. On August 21, 1978, the petitioners, through Devon Corporation, applied to the Oil and Gas Conservation Commission of the West Virginia

Department of Mines for a permit to drill a "deep well" upon the 96 acre tract.[1] However, by letters dated August 21, 1978, and September 1, 1978, the Commission denied the petitioners' permit application. The basis of this denial was the failure by the petitioners to obtain a written consent and easement for the drilling of a deep well from the surface owners of the tract as required by *W. Va. Code*, 22-4A-7(b) (4) and Rule 3.04 of the Operational Rules of the West Virginia Oil and Gas Conservation Commission.

Consequently, on September 15, 1978, the petitioners filed in the Circuit Court of Kanawha County a petition for a writ of mandamus seeking to compel the respondents to grant the necessary permit to drill a deep well upon the 96 acre tract.

As indicated above, it is from the final order of the circuit court denying relief to the petitioners that the petitioners appeal to this Court.

In its final order, the Circuit Court of Kanawha County set forth the following findings of fact:

1. The petitioners are corporations engaged in the exploration for, production and sale of oil and natural gas within the State of West Virginia.

2. Respondents are responsible for the administration and enforcement of the provisions of Section 7, Article 4A, Chapter 22, of the Code of West Virginia, as amended.

3. Under date of October 9, 1968, Lottie Barnette, then the owner of the surface and an undivided one-half interest in the oil and gas of a 96-acre tract of land in Ripley District, Jackson County, West Virginia, executed an oil and gas lease covering her interest in said land to Commonwealth Gas Corporation. Petitioners are successors in title of Commonwealth Gas Corporation in said lease by assignment made by Commonwealth Gas Corporation in June, 1973.

---

[1] *W. Va. Code*, 22-4A-2(a) (13) provides that a deep well ". . . means any well drilled and completed in a formation at or below the top of the uppermost member of the 'Onondaga Group' or at a depth of or greater than six thousand feet, whichever is shallower."

4. Under date of August 2, 1978, Belle Friese, widow, and Betty L. Nuzum and Stanley W. Nuzum, her husband, then the owners of an undivided interest in the oil and gas in and under the same tract of 96 acres, leased their interests to Petitioners for oil and gas purposes.

5. Under date of August 2, 1978, Doris B. Elicker and Peter Elicker, her husband, then the owners of an undivided interest in the oil and gas in and under the same tract of 96 acres, leased their interest to Petitioners for oil and gas purposes.

6. The oil and gas interests leased to Petitioners by the two separate leases dated August 2, 1978, as aforesaid, were oil and gas interests that had been severed from the ownership of the surface by deed from John Kay and Edna G. Kay his wife, dated August 23, 1924, of record in Jackson County, West Virginia, in Deed Book 102, page 173.

7. On August 21, 1978, Petitioners were the owners of the leasehold estates and rights created and existing by virtue of the three oil and gas leases designated above.

8. On August 21, 1978, Petitioners filed with the Oil and Gas Division of the West Virginia Department of Mines their application for a permit to drill an oil and gas well on the 96-acre tract of land covered by the aforesaid leases. The application was to drill a "deep well" as such is defined in Code 22-4A-2(a) (13). The application as filed was complete in all respects except it did not have accompanying it the written consent and easement executed and acknowledged by the then owners of the surface of said 96-acre tract, which such written consent and easement is required by Respondents under the provisions of West Virginia Code 22-4A-7(b) (4) and Rule 3.04 of the Operational Rules of the Oil and Gas Conservation Commission. At the time Petitioners filed their application for a drilling permit there were not then pending any applications or proceedings to have drilling units established pursuant to the provisions of Article 4A, Chapter 22, of the Code.

9. Respondents refused to grant or issue to Petitioners a drilling permit as applied for and Respondents' sole reason for refusing to issue the permit was Petitioners' failure to accompany their application with the written consent and easement executed and acknowledged by the then owners of the surface of said 96-acre tract of land.

As their petition filed in this Court states, the petitioners do not dispute the above findings of fact of the circuit court.

*W. Va. Code*, 22-4A-7(b) (4) provides as follows:

No drilling or operation of a deep well for the production of oil or gas shall be permitted upon or within any tract of land unless the operator shall have first obtained the written consent and easement therefor, duly acknowledged and place [sic] of record in the office of the county clerk, for valuable consideration of all owners of the surface of such tract of land, which consent shall describe with reasonable certainty, the location upon such tract, of the location of such proposed deep well, a certified copy which consent and easement shall be submitted by the operator to the commission.

Furthermore, Rule 3.04 of the Operational Rules of the West Virginia Oil and Gas Conservation Commission provides in part as follows: "All applications submitted to deputy director for oil and gas for a permit * * * to drill any deep well * * * shall be reviewed by the commission [of the oil and gas conservation commission] or by an authorized agent to ascertain compliance with these rules and regulations."

The Circuit Court of Kanawha County concluded that, without the written consent for the drilling of a well from the surface owners, the petitioners had not complied with the provisions of *W. Va. Code*, 22-4A-7(b) (4), and were thus not entitled to the permit. Specifically, the circuit court noted that *W. Va. Code*, 22-4A-7(b) (4) was enacted in 1972 and therefore, the statute was effective prior to the time in 1978 when the petitioners acquired the remaining undivided one-half interest in the oil and gas underlying the 96 acre tract. It was upon this basis that the circuit court held

that the petitioners were subject to the surface owners consent requirement.[2]

In their petition filed in this Court, the petitioners assert that the requirements imposed by *W. Va. Code*, 22-4A-7(b) (4) and Rule 3.04 of the Operational Rules of the Oil and Gas Conservation Commission violate the United States and West Virginia Constitutions. Specifically, the petitioners assert that the statutory consent and easement to be acquired from the surface owners prior to drilling a deep well (1) impairs the obligation of a contract existing prior to the 1972 enactment of *W. Va. Code*, 22-4A-7, and (2) constitutes a taking of the property of the petitioners without due process of law.[3] Furthermore, the petitioners contend that the requirements of *W. Va. Code*, 22-4A-7(b) (4) and Rule 3.04, if constitutional, do not apply in this particular case.

---

[2] In its December 21, 1978, letter memorandum of opinion, the circuit court stated in part as follows:

From the facts, which are stipulated, petitioners do not have the written consent as aforesaid. By various agreements and assignments they possess a lease hold interest in one-half the oil and gas in certain land in Jackson County, West Virginia. . . . The estate they possess was created and, therefore, existed before the effective date of the statute they challenge. They acquired the remaining one-half interest in the oil and gas to said land by a lease from the owners thereof after the effective date of the statute. . . . In *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 87, [sic] 94 S.E. 472 (1917), it was held that the owner of an undivided one-half interest in oil and gas cannot grant a valid lease in all of the oil and gas. A lease made after the enactment of a statute is not impaired by the statute. *Edgar A. Levy Leasing Co. v. Siegel*, 258 U.S. 242, 66 L. Ed. 595 (1921).

[3] *U. S. Const.*, art. I, § 10, provides in part as follows: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."

*W. Va. Const.*, art. III, § 4, provides in part as follows: "No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed."

*U. S. Const.*, amend XIV, provides in part as follows: ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law. . . ."

*W. Va. Const.*, art. III, § 10, provides as follows: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." *See, also, W. Va. Const.*, art. 3, § 1.

The circuit court in its decision relied upon *Levy Leasing Co. v. Siegel*, 258 U.S. 242, 42 S.Ct. 289, 66 L.Ed. 595 (1922), in which the Supreme Court of the United States upheld the constitutionality of certain emergency housing statutes of the State of New York. These statutes limited the power of landlords with respect to the eviction of tenants and the amount charged for rent. The Court concluded that under existing housing conditions the statutes were a reasonable exercise of the police power of the government. In its decision, the Court in *Levy Leasing Co.*, noted that ". . . a lease made subsequent to the enactment of a statute can not be impaired by it." 258 U.S. at 249.

The Supreme Court of the United States in *Levy Leasing Co.* cited the case of *Oshkosh Waterworks Co. v Oshkosh*, 187 U.S. 437, 23 S.Ct. 234, 47 L.Ed. 249 (1903), in which the Court held in Syl. pt. 2, in part, that "[t]he contract clause of the Constitution of the United States has reference only to a statute of a State enacted *after* the making of the contract whose obligation is alleged to have been impaired."[4]

The *Levy Leasing Co.* case is consistent with the general rule that the obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and the performance of the contract is to be regulated by the terms and rules which such laws prescibe.[5]

This Court concludes contrary to the assertion of the petitioners, that the petitioners did not acquire the drilling rights in question in the 96 acre tract until 1978,

---

[4] This Court cited *Levy Leasing Co., supra,* in *State v. Flinn,* 208 S.E.2d 538, 544 (W. Va. 1974) and *Brown v. Arnold,* 125 W. Va. 824, 833, 26 S.E.2d 238, 242 (1943).

[5] *W. B. Worthen Co. v. Kavanaugh,* 295 U.S. 56, 60, 55 S.Ct. 555, 556, 79 L.Ed. 1298, 1301 (1935); *Home Building & Loan Association v. Blaisdell,* 290 U.S. 398, 429, 54 S.Ct. 231, 78 L.Ed. 413, 424 (1934); *Hendrickson v. Apperson,* 245 U.S. 105, 112, 38 S.Ct. 44, 45, 62 L.Ed. 178, 184 (1917); *Northwestern Mutual Life Insurance Co. v. McCue,* 223 U.S. 234, 246, 32 S.Ct. 220, 222, 56 L.Ed. 419, 423 (1912); *Trader v. Jester,* 40 Del. 66, 76, 1 A.2d 609, 613 (1938); *Morris v. Interstate Bond Co.,* 180 Ga. 689, 692 180 S.E. 819, 821 (1935); *Hubbard v. Hubbard,* 264 S.W. 422, 423 (Mo. App. 1924); *Gagnon v. Butte,* 75 Mont. 279, 289, 243 P. 1085, 1088 (1926); *Clark v. Philadelphia,* 328 Pa. 521, 528, 196 A. 384, 387 (1938); *Bettman v. Cowley,* 19 Wash. 207, 214, 53 P. 53, 56 (1898).

subsequent to the effective date of *W. Va. Code,* 22-4A-7. Specifically, this Court has carefully reviewed the title as reflected in the record to the oil and gas rights underlying the 96 acre tract and is of the opinion that the Circuit Court of Kanawha County was correct in concluding that the petitioners acquired a one-half interest in the oil and gas prior to the enactment of *W. Va. Code,* 22-4A-7, and the remaining one half oil and gas interest subsequent to the enactment of *W. Va. Code,* 22-4A-7.[6]

In *Freeman v. Egnor,* 72 W. Va. 830, 834, 79 S.E. 824, 826 (1913), this Court stated that all cotenants must join in agreement before a lessee may enter upon and operate the

---

[6] Lottie Barnette on October 9, 1968, leased to Commonwealth Gas Corporation her interest in the surface and an undivided one-half interest in the oil and gas of the 96 acre tract in Jackson County, West Virginia. This lease from Lottie Barnette to Commonwealth was a 10 year lease. As the learned trial judge indicated in his findings of fact, the petitioners were, by assignment, successors in title of Commonwealth in such lease.

The remaining one-half interest in the oil and gas of the 96 acre tract has a separate history. This one-half interest was first obtained by J. A. Friese from John and Edna Kay by deed dated August 23, 1924. J. A. Friese and Belle Friese, his wife, by agreement dated June 26, 1963, leased this one-half interest to the Union Carbide Corporation. Five years later, J. A. and Belle Friese, by agreement dated July 30, 1968, leased the one-half interest to the Commonwealth Gas Corporation. J. A. and Belle Friese, by agreement dated July 30, 1973, again leased the one-half interest to the Commonwealth Gas Corporation. These leases by J. A. and Belle Friese in 1963, 1968 and 1973 were essentially five year leases. As the July 30, 1973, lease to Commonwealth states: "It is agreed that this lease shall remain in force for the term of five years from this date and as long thereafter as the Lessee is engaged in the production of or search for oil and gas, or either of them, on the leased premises."

Before the Circuit Court of Kanawha County, the parties stipulated "[t]hat in June of 1973 Devon Corporation and its successors acquired from Commonwealth Gas Corporation by various agreements and assignments the working interest in the 96-acre Barnette-Friese Tract." However, with respect to the one-half interest in oil and gas underlying the 96 acre tract derived from J.A. Friese, the record indicates that the interest of the petitioners must have terminated in 1978 (approximately five years subsequent to the 1973 lease) inasmuch as on August 2, 1978, the petitioners again acquired a lease of the one-half interest from the devisees of J. A. Friese.

premises for the production of oil and gas. Specifically, as this Court stated:

> The leases should not have been cancelled upon the state of the pleadings. But are they void or voidable, solely because executed by some co-tenants on their undivided interests in lands held in common with others not joining therein? We do not think they are. Of course, to be effectual in the sense that the lessee may enter on and operate the premises for the production of oil and gas, all the co-tenants must join. A lease by one only does not warrant such entry and production. Those not joining may restrain the lessee from entering for the purpose of operating thereunder without their consent. Numerous cases so hold. One co-tenant can not authorize another to do what he himself can not do; but he may authorize him to do, under any lease or other contract, what he may legally do in his own behalf. *Trees v. Eclipse Oil Co.*, 47 W. Va. 107. Notwithstanding the co-tenancy, each tenant has the same interest and property rights in common as his associates have, and may therefore lawfully grant, lease and otherwise encumber his individual interests. 'An oil and gas lease executed by one or more joint tenants or tenants in common, while not binding on other join tenants or tenants in common, is good between the parties, and is binding on their interests." This terse statement comprehends the law on this subject, and is approved and sustained, directly or indirectly, by the following cases: *Trees v. Eclipse Oil Co., supra*; *Headley v. Hoopengarner*, 60 W. Va. 626; *Pyle v. Henderson*, 65 W. Va. 39; *McNeely v. South Penn Oil Co.*, 58 W. Va. 438; *Stewart v. Tennant*, 52 W. Va. 559; *Sommers v. Bennett*, 68 W. Va. 157; *Garrett v. South Penn Oil Co.*, 66 W. Va. 587; *Ziegler v. Brenneman*, 237 Ill. 15; *Compton v. Peoples Gas Co.*, 75 Kan. 572, 10 L.R.A.N.S. 787.

72 W. Va. at 834.[7]

---

[7] Donley, *The Law of Coal, Oil and Gas in West Virginia and Virginia* § 48 (Michie, 1951) states as follows:

Although the petitioners may have acquired rights in the surface to the 96 acre tract prior to the enactment of *W. Va. Code*, 22-4A-7(b) (4), the language of this section is specifically directed to drilling in that this section provides that without the written consent and easement of the surface owners "no drilling or operation of a deep well for the production of oil and gas shall be permitted." The petitioners do not argue that their surface rights acquired from Lottie Barnette through the Commonwealth Gas Corporation are equivalent to the consent requirements of *W. Va. Code*, 22-4A-7(b) (4). Nor did the petitioners acquire full rights in the oil and gas interests underlying the 96 acre tract until after the enactment of *W. Va. Code*, 22-4A-7(b) (4).

This Court in Syl. pt. 3, *Sizemore v. State Workmen's Compensation Commissioner*, 219 S.E.2d 912 (W. Va. 1975), and Syl. pt. 6, *Lester v. State Workmen's Compensation Commissioner*, 242 S.E.2d 443 (W. Va. 1978), held as follows:

> A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application.

Upon the facts presented to us, this Court concludes that *W. Va. Code*, 22-4A-7(b) (4), and Rule 3.04 of the Operational Rules of the West Virginia Oil and Gas Conservation Commission do not unconstitutionally impair the obliga-

---

While cotenant may not lease for oil and gas purposes the interests of his cotenants, he may lease his own interest. If a cotenant takes exclusive possession of the land and leases it for oil purposes on a royalty basis the excluded cotenant may permit the lessee to continue operations and require an accounting of his proportionate share of the royalties. And, a cotenant of coal lands is not bound by a lease made by the other cotenants, which he did not sign, where reduction to writing and signature was a condition precedent to the existence of such lease.

For this proposition Professor Donley cites the following cases: *Blair v. Dickinson*, 133 W. Va. 38, 54 S.E.2d 828 (1949); *Paxton v. Benedum-Trees Oil Co.*, 80 W. Va. 187, 94 S.E. 472 (1917); and *Freeman v. Egnor, supra*.

tion of contract or constitute the taking of the petitioners' property without due process of law. Nor can this Court say that the surface owners' consent requirement does not apply in this case.

The language of *W. Va. Code*, 22-4A-7(b) (4), is clear that "all owners of the surface" must consent in writing to the drilling or operation of a deep well for the production of oil or gas. This Court is of the opinion that "owners of the surface" means that a prospective driller, to satisfy the requirements of *W. Va. Code*, 22-4A-7(b) (4), must obtain the written consent and easement of all those who were surface owners at the time application to drill a deep well is made to the Oil and Gas Conservation Commission of the West Virginia Department of Mines and if such surface owners subsequently convey their surface interest to another prior to the time the actual drilling or operation of a deep well is commenced, no further written consent and easement pursuant to *W. Va. Code*, 22-4A-7(b) (4) shall be required.

For these reasons the final order of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*