295 S.E.2d 912

**STATE ex rel. A. James MANCHIN, Secretary of State, etc.**

v.

**James E. LIVELY, et al.**

**No. 15599.**

Supreme Court of Appeals of West Virginia.

Sept. 20, 1982.

Timothy N. Barber, Chauncey H. Browning, Jr., Atty. Gen., Charleston, for petitioner.

Gene Carte, Asst. Pros. Atty. and Paul M. Blake, Jr., Pros. Atty., Fayetteville, for respondents.

MILLER, Chief Justice:

This is an original petition for a writ of mandamus in which the petitioner, Secretary of State A. James Manchin, requests that we require the respondents to recount the votes in the Fayette County June primary election in compliance with the procedures required in W.Va.Code, 3–4A–28(4) [1982]. Respondents contend that the petitioner has no standing to bring this action and that because the effective date of the statutory changes occurred after the June 1, 1982 primary, the new statute is not controlling. We disagree with respondents' position.[1]

On March 13, 1982, the West Virginia Legislature amended Article 4A of Chapter 3 of the West Virginia Code. Among the changes, the new law provides in Section 28(4) that in any requested recount, where there has been electronic voting, five percent of the precincts shall be randomly selected and the ballot cards manually counted.

The effective date of the new act, which was June 11, 1982, was ninety days from passage. Proximate to that date, a candidate for the State Senate, Andrew McClung, requested a recount and that the recount be conducted under the requirements of the newly effective provision of W.Va.Code, 3–4A–28(4). Thereafter, the Secretary of State was contacted and, being of the view that the recount provision of the new act was applicable, the Secretary of State brought this action in his capacity as chief elections official under W.Va.Code, 3–1A–6, seeking to compel enforcement of the new Code provision.[2]

## I. STANDING

We have recently delineated the function and use of the writ of mandamus and have noted that cases involving election controversies are frequently the subject of mandamus proceedings due to a need for prompt disposition. *Smith v. The W.Va. State Board of Education*, 170 W.Va. 593, 295 S.E.2d 680 (1982). *E.g.*, *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979); *State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 223 S.E.2d 607 (1976), *appeal dismissed*, *Moore v. McCartney*, 425 U.S. 946, 96 S.Ct. 1689, 48 L.Ed.2d 190; *State ex rel. Cline v. Hatfield*, 145 W.Va. 611, 116 S.E.2d 703 (1960).

Whether the Secretary of State has standing to obtain what amounts to a construction of the applicability of the new election statute is essentially resolved by examining his official duties. He is denominated in W.Va.Code, 3–1A–6, as "the chief election official of the State." Under this Code provision, he has the power and duty to "investigate the administration of election laws" and "[i]t shall be his further duty to advise with election officials."[3]

1. Because of the urgency of the matter, we initially issued an order upholding the petitioner's prayer for relief, indicating in the order that a written opinion would follow. This is a practice we have followed in other cases where time was of the essence. *E.g., State ex rel. Board of Education v. Rockefeller*, 167 W.Va. 72, 281 S.E.2d 131 (1981); *West Virginia Libertarian Party v. Manchin*, 165 W.Va. 206, 270 S.E.2d 634 (1980); *State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 (1979).

2. A writ of mandamus was originally sought by the petitioner in the Circuit Court of Fayette County and was apparently denied on the stand-

ing issue. Although the issue is not raised in this case as to whether an appeal rather than an original mandamus should be utilized, in a similar situation we permitted the filing of an original mandamus. In Syllabus Point 2, in part, of *State ex rel. Bromelow v. Daniel, supra*, we held that an election mandamus proceeding is not held "to the same degree of procedural rigor as an ordinary mandamus case."

3. The full text of W.Va.Code, 3–1A–6, is:

"The secretary of state shall be the chief election official of the State. He shall have authority, after consultation with the state

Furthermore, the Secretary of State is given under this statute, after consultation with the State election commission, the authority "to make, amend and rescind such rules, regulations and orders as may be necessary to carry out the policies of the Legislature" as they pertain to the election laws. The statute also goes on to provide that all election officials shall abide by such regulations and orders.[4]

■ It is apparent that the Legislature, by designating the Secretary of State as the chief election official and by recognizing that his office should advise local election officials as to the election laws, intended to give him some position or standing in the election law field. There are obviously those occasions when local election officials will seek his guidance as to proper election practices or interpretations of the election laws. Where, as here, there exists some ambiguity as to whether a given provision of the election law is applicable, we believe that it is only common sense to permit the Secretary of State to have standing to resolve the question by bringing an appropriate action. Moreover, as stated in 67 C.J.S. *Officers* § 250 (1978), "[g]enerally, public officers have capacity to sue commensurate with their public trust or duties without express statutory authority."

The general reason advanced for the above-stated rule is that the capacity to sue is an important incident to the duties of

election commission, of which he is a member, to make, amend and rescind such rules, regulations and orders as may be necessary to carry out the policy of the legislature, as contained in this chapter. It shall be the duty of all election officials, county courts, clerks of county courts, clerks of circuit courts, boards of ballot commissioners, election commissioners and poll clerks to abide by such rules, regulations and orders, which shall include:

"(a) Uniform rules of procedure for registrars and other registration officials in the performance of their duties, as to time and manner of performance;

"(b) Uniform rules for the purging of registration records;

"(c) Uniform rules for challenging registrants; and

"(d) Any other rules, regulations or directions necessary to standardize and make effective the administration of the provisions of this chapter.

"The secretary of state also shall have authority to require collection and report of statistical information and to require other reports by county courts, clerks of county courts and clerks of circuit courts.

"It shall be his further duty to advise with election officials; to furnish to the election officials a sufficient number of indexed copies of the current election laws of West Virginia and the administrative orders and rules and regulations issued or promulgated thereunder; to investigate the administration of election laws, frauds and irregularities in any registration or election; to report violations of election laws to the appropriate prosecuting officials; and to prepare an annual report.

"The secretary of state shall also have the power to administer oaths and affirmations, issue subpoenas for the attendance of witnesses, issue subpoena duces tecum to compel the production of books, papers, records, registration records and other evidence, and fix the time and place for hearing any matters relating to the administration and enforcement of this chapter, or the rules, regulations and directions promulgated or issued hereunder by the secretary of state as the chief election official of the State. In case of disobedience to a subpoena or subpoena duces tecum, he may invoke the aid of any circuit court in requiring the attendance, evidence and testimony of witnesses and the production of papers, books, records, registration records and other evidence.

"All powers and duties vested in the secretary of state under this article may be exercised by appointees of the secretary of state at his discretion, but the secretary of state shall be responsible for their acts."

4. We note that in at least two instances the Attorney General has issued opinions pertaining to the powers of the Secretary of State as to election matters under W.Va.Code, 3–1A–6, and has recognized that this Code section gives him rather broad powers. Ops. Att'y Gen. July 28, 1981, and October 22, 1979. In the former opinion, this language is found:

"It is a long-standing policy of this office that we do not take issue with administrative findings of fact and policy decisions made by other state executive officers acting within their proper spheres of authority. Our policy is particularly applicable to determinations by fellow constitutional officers such as the Secretary of State. In this instance, the Secretary of State has made a finding that the use of voting machines and electronic voting systems would be impracticable for this special one-issue election. The Secretary of State is the chief election official of the State (Code 3–1A–6). In that capacity he has made a finding on a matter squarely within his scope of authority. In accordance with our policy, the Attorney General will not question the accuracy or wisdom of that finding."

public officers and it is often necessary that such an official be able to ensure that he is acting properly by seeking court guidance. *E.g., Carter v. Blaine Casualty Investment Company,* 45 F.2d 643 (D.Idaho 1930); *Auditor General v. Lake George & Michigan Railroad Company,* 82 Mich. 426, 46 N.W. 730 (1890); *City of Wilburton v. King,* 162 Okl. 32, 18 P.2d 1075 (1933); *Industrial Accident Board v. Texas Workmen's Compensation Assigned Risk Pool,* 490 S.W.2d 956 (Tex.Civ.App. 1973). In *State ex rel. Carman v. Sims,* 145 W.Va. 289, 115 S.E.2d 140 (1960), we permitted the West Virginia State Tax Commissioner to bring an original mandamus in this Court against the auditor to compel payment of certain travel vouchers submitted by employees of the tax commissioner.

Of particular relevance is the case of *Brown v. Superior Court of Los Angeles County,* 5 Cal.3d 509, 487 P.2d 1224, 96 Cal.Rptr. 584 (1971), where the Secretary of State of California brought an original mandamus in the California Supreme Court to challenge a ruling that had declared an election statute to be unconstitutional. The court recognized that the Secretary of State had a beneficial standing in his role of chief election official which required him to advise other election officials on the meaning of the election laws. The court concluded that this role necessitated his ability to obtain court interpretation of election laws in order to properly administer them:

> "His beneficial interest is amply demonstrated by a showing that he bears overall responsibility for administering the disclosure laws the constitutionality of which is now challenged. The uncertain-

ty engendered by the respondent court's order of dismissal requires final resolution in order that the Secretary of State may be properly and fully informed with respect to these public responsibilities." 5 Cal.3d at 514, 487 P.2d at 1227, 96 Cal.Rptr. 587.

We, therefore, conclude that, under the foregoing authorities, the Secretary of State of West Virginia does have standing to bring an action to obtain a constructive enforcement of the State's election laws by virtue of his role as chief election official and the powers given to him in W.Va.Code, 3–1A–6.[5]

## II. EFFECTIVE DATE OF STATUTE

■ The respondents contend that although the effective date (June 11, 1982) of the amendments to W.Va.Code, 3–4A–1, *et seq.*, was ninety days from the date of passage, the act should not have any applicability to any aspect of the June 1, 1982 election. This argument would have merit if new amendments were being applied to a voting transaction that was completed prior to June 11, 1982. However, the formal recount based on Candidate McClung's request was not scheduled to begin until June 15, 1982.

The particular section relied upon, W.Va. Code, 3–4A–28 [1982], amended the existing section to provide for a right upon the canvass and any requested recount, where voting was done by electronic voting, to have five percent of the precincts randomly selected and their ballots subject to a manual count.[6] We find that this provision has nothing to do with the initial voting procedures but is designed as a procedural device to come into play upon the canvass or

---

5. We recognize that W.Va.Code, 3–1A–6, provides that the Secretary of State should "report violations of the election laws to the appropriate prosecuting officials," which of course means that such criminal prosecutions are handled by the prosecuting attorneys.

6. The full text of W.Va.Code, 3–4A–28(4) [1982], is:

   "During the canvass and any requested recount, at least five percent of the precincts shall be chosen at random and the ballot cards cast therein counted manually. The

same random selection shall also be counted by the automatic tabulating equipment. If the variance between the random manual count and the automatic tabulating equipment count of the same random ballots, is equal to or greater than one percent, then a manual recount of all ballot cards shall be required. In the course of any recount, if a candidate for an office shall so demand, or if the board of canvassers shall so elect to recount the votes cast for an office, in any precinct shall be recounted by manual count."

any requested recount as a means of testing the accuracy of the tabulation obtained through the electronic voting device.

There is nothing within the terms of the new amendments which specifically exclude their applicability to the June 1982 primary election. The Legislature in 1978 changed the date of the primary election from the second Tuesday in May to the first Tuesday in June as of the year 1980. W.Va.Code, 3–5–1 [1978]. We must assume that, when the Legislature set the ninety-day effective date when the bill was passed in March of 1982, they were aware of the June 1982 primary date. Moreover, it is common knowledge that the recount provisions are typically post-election procedures. Consequently, we believe that the Legislature, acting with this knowledge, must have realized that the new amendments could well impact on recount procedures arising from the 1982 election. The Legislature's failure to specifically exclude the 1982 primary from the operation of the new amendments is contrasted with the fact that when the Legislature reset the primary date in W.Va.Code, 3–5–1 [1978], it made clear the particular primary on which the act would have its impact.[7] Consequently, we cannot imply any legislative intent to exclude this particular section from operating on the recount in this case.

■ Statutes are ordinarily given prospective operation as we have stated in Syllabus Point 3 of *Shanholtz v. Monongahela Power Co.*, 165 W.Va. 305, 270 S.E.2d 178 (1980): "A statute is presumed to operate prospectively unless the intent that it shall operate retroactively is clearly expressed by its terms or is necessarily implied from the language of the statute." We acknowledged this rule in *Woodring v. Whyte*, 161 W.Va. 262, 242 S.E.2d 238, 244 (1978), and said that: "There may be some relaxation of this rule for a statute which is purely procedural or remedial in nature."

Certainly, the particular provision of W.Va. Code, 3–4A–28(4), involves a purely procedural rule, that is, how the recount is to be conducted. Of even more significance is the rule contained in Syllabus Point 3 of *Sizemore v. State Workmen's Compensation Commissioner*, 159 W.Va. 100, 219 S.E.2d 912 (1975), which states:

"A law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage can it be considered to be retroactive in application."

*See also Devon Corporation v. Miller*, 167 W.Va. 362, 280 S.E.2d 108 (1981); *Lester v. State Workmen's Compensation Commissioner*, 161 W.Va. 299, 242 S.E.2d 443 (1978).

In *State ex rel. Kittle v. Ritchie County Court*, 84 W.Va. 212, 99 S.E. 439 (1919), the Legislature had enacted a statute which required all public funds coming into the hands of a sheriff to be deposited in an interest bearing account. The statute further provided that the interest so obtained should be credited to the general county fund. The interest on funds derived from the sale of road bonds was acknowledged as included in such funds. Subsequently, the Legislature enacted a provision which required interest from funds derived from the sale of road bonds to be credited to the district road fund held by the sheriff. The argument was made that the new statute could not be construed to apply to interest arising from funds previously obtained from the sale of road bonds prior to the enactment of the new statute, because such construction would give the new statute retroactive effect. This court rejected the retroactive argument and stated that the statute applied only to interest accruing after the date of its enactment.

---

7. W.Va.Code, 3–5–1 [1978], states:
  "Primary elections shall be held at the voting place in each of the voting precincts in the state, for the purposes set forth in this article, on the first Tuesday in June in the year one thousand nine hundred eighty and in each second year thereafter.

  "At such election the polls shall be opened and closed at the hours provided for opening and closing the polls in a general election."
  *See also* W.Va.Code, 3–5–9, where the Legislature used the same provision making the amendments "apply to the primary election held in the year one thousand nine hundred eighty."

In the present case, the new amendment relative to the recount procedure operates only on a recount that has occurred after the effective date of the act. The recount provision is completely severable and has no impact on any substantive right that existed prior to the effective date of the enactment. The particular amendment operates prospectively on a procedural matter involving the mechanism of the recount. Clearly, *Sizemore* and our related cases are applicable and the new amendment should be utilized on the recount.

For these reasons a writ of mandamus is issued against respondents.

Writ Granted.