IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

FILED

September 17, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0877

STATE OF WEST VIRGINIA EX REL. NATALIE E. TENNANT,
WEST VIRGINIA SECRETARY OF STATE,
Petitioner

v.

BALLOT COMMISSIONERS OF MINGO COUNTY, WEST VIRGINIA;
JIM HATFIELD, as Clerk of the Mingo County Commission and
Member of the Ballot Commissioners of Mingo County, West Virginia;
ANGIE BROWNING, as Member of the Ballot Commissioners of Mingo
County, West Virginia; and RAMONA BROWNING, as Member of
the Ballot Commissioners of Mingo County, West Virginia,
Respondents

———————————————————————————————

PETITION FOR WRIT OF MANDAMUS

WRIT GRANTED

———————————————————————————————

Submitted:  September 17, 2014
Filed:  September 17,  2014

Patrick Morrisey, Esq.
Attorney General
Jennifer S. Greenlief, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

Benjamin F. White, Esq.
Chapmanville, West Virginia
Counsel for Respondents

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE BENJAMIN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1. "Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syl. Pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981).

2. Pursuant to West Virginia Code § 3-10-1(c)(3) (2013), a county board of ballot commissioners has no authority to place an election for judicial office on the ballot absent a valid gubernatorial proclamation declaring a judicial vacancy to be filled by an election.

.

LOUGHRY, Justice:

Petitioner Natalie E. Tennant, the Secretary of State, seeks a writ of mandamus to compel the Respondent Ballot Commissioners of Mingo County (hereinafter "Ballot Commissioners") to remove any and all references to an election to fill an unexpired term of judge for the Eighth Family Court Circuit from the 2014 general election ballot. Relying on statutory authority that governs the filling of vacant judicial offices, the Secretary of State maintains that the Ballot Commissioners lack the authority to *sua sponte* place a candidate for a judicial office on the ballot.[1] As support for their position, the Ballot Commissioners look to the West Virginia Constitution[2] as well as a statutory provision that pertains to the nominating procedures employed by the executive committee of a political party where there is a vacancy in certain county offices.[3] Finding the constitutional provision to be wholly inapposite and further determining, after a thorough examination of the controlling election laws, that the provision upon which the Ballot Commissioners rely is expressly inapplicable to a judicial office, we find that the petitioner is entitled to the requested writ of mandamus.

---

[1]*See* W.Va. Code §§ 3-6-2(f), 3-10-3 (2013).

[2]*See* W.Va. Const. art. VIII, § 7.

[3]*See* W.Va. Code § 3-5-19(b) (2013).

1

## I. Factual and Procedural Background

On May 21, 2014, Governor Earl Ray Tomblin appointed Judge Miki J. Thompson, the Family Court Judge for the Eighth Family Court Circuit, to fill the vacancy on the Thirtieth Judicial Circuit created by the resignation of Circuit Court Judge Michael Thornsbury. Because Judge Thompson's elected term of office was not set to expire until January 2017, the next scheduled election for the affected family court judgeship would not be held until November 2016. As a result, Governor Tomblin declared a vacancy for the Eighth Family Court Circuit on or about July 25, 2014. The West Virginia Judicial Vacancy Advisory Committee accepted applications for the position through August 19, 2014. Interviews for the judicial position were scheduled for September 12, 2014. Upon the completion of those interviews, and his receipt of the recommendations from the Judicial Vacancy Advisory Committee, Governor Tomblin is expected to make an appointment to fill the vacant family court position.

On August 5, 2014, the Mingo County Democratic Executive Committee met and nominated a candidate (Jonathan "Duke" Jewell) to fill the vacancy created by Judge Thompson's vacation of her family court seat. By letter dated August 7, 2014, Respondent Jim Hatfield, as Clerk of the Mingo County Commission, received notice of this decision and was accordingly requested to place Mr. Jewell on the ballot for the General Election scheduled for November 4, 2014. The Secretary of State's office received a copy of this letter by facsimile.

2

After discovering the intentions of the Ballot Commissioners, the office of the Secretary of State communicated with Respondent Hatfield about this election matter. Notwithstanding the petitioner's clear position with regard to the impropriety of placing a vacancy for the Eighth Family Court Circuit on the ballot,[4] the Secretary of State learned on August 27, 2014, that the proposed ballot submitted to the printers by the respondent Ballot Commissioners included an election slated for the Eighth Family Court Circuit.

Seeking immediate compliance with this state's election laws, the Secretary of State issued an order on August 28, 2014, to the Ballot Commissioners.[5] Through that directive, the petitioner ordered the Ballot Commissioners to remove from the 2014 general election ballot any and all references to an election to fill an unexpired term of judge of the Eighth Family Court Circuit. While the order set forth an expected compliance date of September 2, 2014, Respondent Hatfield requested additional time to "read, consider, and decide if legal action is necessary to allow the good people of Mingo County to decide who will be their Family Court Judge and not by some appointment as you recommend." In response to the request for additional time, the Secretary of State moved the deadline forward to September 4, 2014.

---

[4]From the beginning, the Secretary of State's office informed the Clerk of the Mingo County Commission that the family court position was subject to gubernatorial selection rather than election.

[5]In the order, the Secretary of State set forth various election statutes which she found to be controlling: W.Va. Code §§ 3-1A-6(a), 3-6-2(f), 3-10-1, and 3-10-3 (2013).

When the amended compliance date passed with no response from the Ballot Commissioners indicative of their intent to accede to the petitioner's directives concerning the proposed ballot, the petitioner sought extraordinary relief from this Court.[6]

## II. Standard of Review

The foundational requirements for the issuance of a writ of mandamus are axiomatic: "Before this Court may properly issue a writ of mandamus three elements must coexist: (1) the existence of a clear right in the petitioner to the relief sought; (2) the existence of a legal duty on the part of the respondent to do the thing the petitioner seeks to compel; and (3) the absence of another adequate remedy at law." Syl. Pt. 3, *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781 (1981). Bearing this standard in mind, we proceed to determine whether the petitioner has demonstrated "a clear legal right thereto and a corresponding duty on the respondent[s] to perform the act demanded." Syl. Pt. 2, in part, *State ex rel. Cooke v. Jarrell*, 154 W.Va. 542, 177 S.E.2d 214 (1970).

---

[6]The petition seeking a writ of mandamus was filed on September 5, 2014. Upon the filing of the response to the petition, this Court learned that on the same day the Secretary of State filed her petition with this Court, the respondents filed a writ of prohibition in the Circuit Court of Mingo County seeking to resolve the same issue presented here: whether the 2014 general election ballot may contain an election for the Eighth Family Court Circuit. While the respondents suggest that this Court should bow out of this matter and allow it to be handled on a local level, this Court undisputedly has authority to hear this matter pursuant to its original jurisdiction. *See* W.Va. Const. art. VIII, § 3. Given the pressing nature of the matter before us, we find an incumbent need to expeditiously address and resolve the election dispute in this forum.

## III. Discussion

The fact that the petitioner has the authority to bring this action is beyond dispute given her position as the chief election official for this state. *See* Syl. Pt. 1, *State ex rel. Manchin v. Lively*, 170 W.Va. 672, 295 S.E.2d 912 (1982) ("The Secretary of State of West Virginia does have standing to bring an action to obtain a constructive enforcement of the State's election laws by virtue of his [or her] role as chief election official and the powers given to him [or her] in W.Va. Code, 3-1A-6."). Under authority of West Virginia Code § 3-1A-6(a), which requires compliance with orders issued by the petitioner in her capacity as the chief election official, the Secretary of State sought to bring the respondent Ballot Commissioners in compliance with the statutory provisions governing the filling of a judicial vacancy. When the Ballot Commissioners failed to comply with her August 28, 2014, order, she resorted to a request for extraordinary relief from this Court. *See State ex rel. Maloney v. McCartney*, 159 W.Va. 513, 527, 223 S.E.2d 607, 616 (1976) (recognizing "that the intelligent and meaningful exercise of the franchise requires some method of averting a void or voidable election").

The manner in which a vacancy in an office subject to election is filled is governed by article ten of chapter three. Pursuant to West Virginia Code § 3-10-1(a), "[w]hen a vacancy occurs in an elected office of the state or county, it shall be filled according to the processs set forth in this article." Section three of article ten specifically

5

addresses how a vacancy in the office of a judge of a family court is to be handled.[7]  That section provides that such a vacancy "is filled by the Governor of the state by appointment and subsequent election to fill the remainder of the term, if required by section one [§ 3-10-1] of this article."  W.Va. Code § 3-10-3.

Section one of article ten addresses whether an election is required following a gubernatorial appointment to fill a vacancy.  The timing of when the vacancy occurs controls both the term of the appointment and the related issue of an election.  Specifically, the date when the office vacancy occurs–before or after the "primary cutoff date"[8]– determines whether an election is required.  The vacancy in this case clearly transpired after the "primary cutoff date," which fell on February 18, 2014.  Accordingly, we proceed to rely upon the statutory provision that applies to vacancies occurring post-primary cutoff date. Under West Virginia Code § 3-10-1(b)(1), "[i]f the vacancy occurs after the primary cutoff

---

[7]That provision similarly addresses vacancies "in the offices of Secretary of State, Auditor, Treasurer, Attorney General, Commissioner of Agriculture, Justice of the Supreme Court of Appeals or in any office created or made elective to be filled by the voters of the entire state, [and] judge of a circuit court. . . ."  W.Va. Code § 3-10-3.

[8]The "primary cutoff date" is defined as "the eighty-fourth day before the primary election that immediately precedes the general cutoff date."  W.Va. Code § 3-10-1(a)(2). The "general cutoff date" is designated as "the eighty-fourth day before the general election that immediately precedes the general election where the office would be on the ballot for election if there were not a vacancy."  W.Va. Code § 3-10-1(a)(1).

6

date, then that appointee shall hold the office until the end of the term of office."[9]  The

gubernatorial appointee to the Eighth Family Court Circuit will retain that position until the

end of the original term of Judge Thompson.  That is, until a new judge is elected and sworn

in after the general election in 2016.

Failing to address the language of West Virginia Code § 3-10-1(b)(1) and its

effect on the outcome of this case, the respondents summarily reject the applicability of any

governing provisions in article ten.  Their analysis begins with a recitation of the following

statutory provision:

> Except as otherwise [provided] in article ten [§§ 3-10-1
> et seq.] of this chapter, if any vacancy occurs in a partisan office
> or position other than political party executive committee, which
> creates an unexpired term for a position which would not
> otherwise appear on the ballot in the general election, and the
> vacancy occurs after the close of candidate filing for the primary
> elections but not later than eighty-four days before the general
> election, a nominee of each political party may be appointed by
> the executive committee and certified to the proper filing officer
> no later than seventy-eight days before the general election.

W.Va. Code § 3-5-19(b) (2013).

The respondents gravely misapprehend the introductory language set forth in

---

[9]The proviso language of West Virginia Code § 3-10-1(b)(1) is inapplicable as it
pertains to specific vacated offices other than a family court judgeship.  Those offices are
the U.S. Congress, circuit court clerk, county commissioner, clerk of county commission,
prosecuting attorney, sheriff, assessor, and surveyor.  *See* W.Va. Code §§ 3-10-1(b)(1), 3-
10-4, 3-10-6, 3-10-7, 3-10-8.

West Virginia Code § 3-5-19(b), which provides that the provisions of article ten contained within chapter three of the West Virginia Code have preclusive authority with regard to the provisions of section nineteen (b). *Id.* While seemingly cognizant of the required statutory cross reference to article ten, the respondents improperly limit their focus to the first section of that article, reasoning as follows:

> West Virginia Code § 3-10-1(a) provides that "[w]hen a vacancy occurs in an elected office of the state or county, *it shall be filled according to the processes set forth in this article. West Virginia Code § 3-10-1 is devoid of any specific mention of filling a vacancy for family court judge*. Thus, the Mingo County Democratic and Republican Executive Committee could appoint individuals to be candidates to fill the vacancy. (emphasis supplied)

In making this argument, the respondents disclose a fatally flawed reading of the statutory language under review. Given that the legislatively-dictated exception to the provisions of West Virginia Code § 3-5-19(b) is the *entirety* of article ten and not just the first section, the respondents overlook the existence of clear statutory authority with regard to the filling of a vacancy for a family court judgeship.

Had the respondents followed the statutory imperative of reviewing *all* of the provisions of chapter three, article ten, they would have encountered the controlling language of West Virginia Code § 3-10-3. As discussed above, that statutory provision specifically recognizes the potential for a vacancy in the office of "judge of a family court" and further addresses how such a vacancy is to be filled. *See id.* With no exceptions provided, the

8

governor is required to fill the vacancy. Then, as previously related, an election may or may not be required according to the provisions set forth in section one of article ten, chapter three. *See* W.Va. Code § 3-10-1.

Even a cursory reading of the statutes at issue demonstrates that the provisions the respondents rely upon in West Virginia Code § 3-5-19(b) are wholly inapplicable to the vacancy at hand. In 2001, the Legislature expressly included the office of family court judge within those specified offices for which the governor has the authority to fill a vacancy. *See* W.Va. Code § 3-10-3. The duration of that appointment, as discussed above, is controlled by the provisions of West Virginia Code § 3-10-1. Because of the timing of this particular vacancy, no election will be required prior to the elections, primary and general, that will take place in 2016.

In citing article eight, section seven of the state constitution as support for their position that an election to fill the family court judge position is mandated, the respondents display yet another flawed and incomplete reading of critical language. Looking to the provisions of article eight, section seven, the respondents quote the following language, which applies by separate constitutional provision to family court judges:[10]

---

[10]Article eight, section sixteen provides: "The provisions of section seven and eight of this article applicable to circuit court judges shall also apply to family court judges." W.Va. Const. art. VIII, § 16.

9

> If from any cause a vacancy shall occur in the office of a justice of the supreme court of appeals or a judge of a circuit court, the governor shall issue a directive of election to fill such vacancy in the manner prescribed by law for electing a justice or judge of the court in which the vacancy exists, and the justice or judge shall be elected for the unexpired term; and in the meantime, the governor shall fill such vacancy by appointment until a justice or judge shall be elected and qualified.

W.Va. Const. art. VIII, § 7. Critical to this dispute, however, is the final sentence of that constitutional provision, glaringly omitted by the respondents, which provides as follows: "If the unexpired term be less than two years, or such additional period, not exceeding a total of three years, as may be prescribed by law, *the governor shall fill such vacancy by appointment for the unexpired term*." *Id.* (emphasis supplied).

In the case before us, the unexpired term falls within the constitutionally-prescribed period that a gubernatorial appointee to a family court judgeship may hold without the requirement of an election. With implicit reference to West Virginia Code § 3-10-1(b),[11] which specifies when an election must be held for gubernatorial appointees, the judicial appointee to Judge Thompson's unexpired term will hold that position for less than three years. That period of time fully comports with the provisions of article eight, section seven of the state constitution. As a result, an election is not required under our constitution. Just

---

[11]By providing that "the governor shall issue a directive of election to fill such vacancy in the manner prescribed by law for electing a justice or judge [or family court judge]," this language references West Virginia Code § 3-10-1, which sets forth when an election is required for appointees to judicial office vacancies. W.Va. Const. art. VIII, § 7.

as they were unable to frame a statutory impediment, the respondents have equally failed to construct a constitutional deficiency with regard to the filling of the subject judgeship without an election prior to 2016.

As the Secretary of State correctly observes, the respondents have no authority to unilaterally place an election for a judicial vacancy on their general election ballot. By law, it is the governor who has the authority to issue the required proclamation declaring that the judicial "office will appear on the next regular primary election and subsequent general election." W.Va. Code § 3-10-1(c)(3). No such proclamation has been issued for the Eighth Family Court Circuit.[12] That the actions of the Ballot Commissioners at issue in this case were improper is clear from the following provision: "The board of ballot commissioners may not place any issue on the ballot for election which is not specifically authorized under the West Virginia Constitution or statutes or which has not been properly ordered by the appropriate governmental body charged with calling the election." W.Va. Code § 3-6-2(f) (2013). In this case, the governor is the appropriate governmental body charged with calling for an election to fill a judicial vacancy. W.Va. Code § 3-10-1(c)(3). Accordingly, we hold that pursuant to West Virginia Code § 3-10-1(c)(3) (2013), a county board of ballot commissioners has no authority to place an election for judicial office on the ballot absent

_____

[12]While the Mingo County Democratic Executive Committee purported to issue such a "proclamation," that governmental body lacked any authority to issue a proclamation for the judicial office at issue.

11

a valid gubernatorial proclamation declaring a judicial vacancy to be filled by an election. Given the undisputed absence of the requisite gubernatorial proclamation and corresponding call for an election, the Ballot Commissioners lacked the necessary authority to place an election for the Eighth Family Court Circuit on their 2014 general election ballot.

## IV. Conclusion

Having demonstrated a clear right to the relief requested, the writ of mandamus sought by the Secretary of State is granted. The respondents are directed to remove any and all references to an election to fill an unexpired term of judge for the Eighth Family Court Circuit from the 2014 general election ballot. The Clerk of this Court is directed to issue the mandate forthwith.

Writ granted.