IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 21-0051

_____

FILED
June 2, 2021
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel. JEFF MAYNARD,
CHAIR OF THE WAYNE COUNTY REPUBLICAN
EXECUTIVE COMMITTEE,
Petitioner

v.

JAMES C. JUSTICE, II, GOVERNOR OF WEST VIRGINIA,
Respondent

and

THE WEST VIRGINIA REPUBLICAN PARTY, INC.,
Respondent Intervenor

_____

PETITION FOR WRIT OF MANDAMUS

WRIT DENIED

_____

Submitted: February 9, 2021
Filed: June 2, 2021

John H. Bryan, Esq.
John H. Bryan, Attorney at Law
Union, West Virginia
Counsel for Petitioner

Lindsay S. See, Esq.
Douglas P. Buffington, II, Esq.
Curtis R. A. Capehart, Esq.
Virginia M. Payne, Esq.
Office of the West Virginia Attorney
General
Charleston, West Virginia
Counsel for Respondent

J. Zak Ritchie, Esq.
Andrew C. Robey, Esq.
Hissam Forman Donovan Ritchie PLLC
Charleston, West Virginia
Counsel for Respondent Intervenor

Hoyt E. Glazer, Esq.
Abraham J. Saad, Esq.
Glazer Saad Anderson L.C.
Huntington, West Virginia
Counsel for Amicus Curiae Jason Stephens

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "Mandamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.,* 151 W. Va. 207, 151 S.E.2d 102 (1966).

2.      "A writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W. Va. 538, 170 S.E.2d 367 (1969).

3.      "Because there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case." Syl. Pt. 2, *State ex rel. Bromelow v. Daniel,* 163 W. Va. 532, 258 S.E.2d 119 (1979).

4.      "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted." Syl. Pt. 11, *Brooke B. v Ray,* 230 W. Va. 355, 738 S.E.2d 21 (2013).

5.     "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly,* 135 W. Va. 877, 65 S.E.2d 488 (1951).

WOOTON, Justice:

This request for extraordinary relief under the Court's original jurisdiction has its genesis in the resignation of Derrick Evans, a Republican, from his newly elected position as a member of the House of Delegates from the Nineteenth Delegate District. Petitioner Jeff Maynard ("Petitioner"), Chair of the Wayne County Republican Executive Committee, seeks a writ of mandamus compelling James C. Justice, II, Governor of West Virginia ("Governor Justice") to select Mr. Evans' replacement from a list of three candidates submitted by "the executive committee members of Wayne County, WV residing in the 19th delegate district." After review of the parties' briefs and arguments, the several appendices, and the applicable law, we deny the writ of mandamus sought by Petitioner in this matter.

## I.      Factual and Procedural History

In the 2020 general election Derrick Evans, a Republican, was elected to the West Virginia House of Delegates from the Nineteenth Delegate District. The Nineteenth Delegate District is entirely contained within Wayne County and consists of a large portion, but not all, of Wayne County.[1]  On January 9, 2021, prior to the commencement of the

---

[1] The remaining portion of Wayne County lies within the Seventeenth Delegate District. In this opinion, we refer to a district such as the Nineteenth Delegate District as an "intra-county delegate district," that is, a delegate district which is entirely contained within a single county but does not comprise the entire county. *See* text *infra.*

1

2021 legislative session, Delegate Evans resigned from the West Virginia House of Delegates as a result of his arrest in connection with the disruption at the United States Capitol on January 6, 2021.

On January 25, 2021, Petitioner, in his capacity as Chair of the Wayne County Republican Executive Committee, petitioned this Court for a writ of mandamus requiring Governor Justice to fill the vacancy in the House of Delegates' Nineteenth Delegate District from the list of three candidates set forth in a letter ("the county letter") from Petitioner dated January 13, 2021, and received by the Governor on January 14, 2021. *See* text *infra*. Petitioner sought expedited relief in order for a new delegate to be seated, if possible, prior to the commencement of the 2021 legislative session on February 20, 2021. This Court, in its rule to show cause issued on January 28, 2021, stayed any and all legislative action by any person appointed to fill the vacancy in the Nineteenth Delegate District until final resolution of this matter.[2] After oral argument on February 9, 2021, an

---

[2] After the rule to show cause was issued, the West Virginia Republican Party, Inc. (at times "respondent intervenor") filed a motion to intervene, which was granted the same day. On February 4, 2021, Petitioner moved for leave to file a reply brief and supplemental appendix, which leave was granted. On February 5, 2021, Jason Stephens, an unsuccessful candidate for the Nineteenth Delegate District House of Delegates seat, filed a motion to intervene or, in the alternative, for leave to file an amicus curiae brief. The Court granted Mr. Stephens leave to file an amicus brief, which was filed on February 8, 2021. This Court appreciates the submission of the amicus curiae.

order was entered directing the issuance of a mandate denying the writ of mandamus and lifting the stay. The mandate also indicated that this opinion would follow in due course.

In his petition Petitioner represents that following the resignation of Delegate Evans, in his capacity as Chair of the Wayne County Republican Executive Committee he began taking phone calls from interested parties, public officials and concerned citizens from all over the State regarding the vacancy. Petitioner further states that he "gathered committee members residing in the 19th Delegate District for discussion and selection of the three qualified candidates for submission to the Governor, pursuant to W. Va. Code § 3-10-5[,]" and that by January 13, 2021, this group had selected three qualified candidates for the legislative vacancy. In the affidavit included in his supplemental appendix, and again during oral argument, Petitioner represented that the group making the selection consisted exclusively of all four members of the Wayne County Republican Executive Committee who reside in the Nineteenth Delegate District. The identities of these four persons were not made known to this Court.[3]

---

[3] The amicus curiae asserts that Petitioner did not "have an open process to solicit or select members" and that respondent intervenor's list, *see* text *infra*, "was incomplete as there was an insufficient number of selectors." Amicus further alleges "that at least two persons on the [county and state] committees were not eligible to select the replacement delegates[.]" For the reasons set forth *infra*, the composition of the group participating in the selection of the individuals whose names were submitted to the Governor in either the county or state letters is not material to the Court's holding herein.

3

The county letter was received by the Governor's Office on January 14, 2021, and stated that it was submitted by "the executive committee members of Wayne County, WV residing in the 19th Delegate District." The letter was on Wayne County Republican Executive Committee letterhead and, while the letter was not signed, the text was over the name of Petitioner in his capacity as Chairman of the Wayne County Republican Executive Committee. The county letter identified three candidates for the vacancy: Mark Ross, Jay Marcum, and Chad Shaffer.

Also on January 14, 2021, the West Virginia Republican Party placed an ad in the newspaper seeking applicants interested in the vacancy, thereby commencing a second selection process that culminated in transmission of a letter ("the state letter") dated January 21, 2021, to the Governor and the West Virginia Secretary of State. The state letter listed three candidates for the vacancy: Joshua Booth was listed first, followed by Mark Ross and Chad Shaffer, two names that were also listed in the county letter. The state letter was on West Virginia Republican Party letterhead and was signed by Roman Stauffer as Acting Chairman of the West Virginia Republican Party. Interestingly, the state letter was also signed by Petitioner and Janie Moyer, as Chair and Secretary, respectively, of the

Wayne County Republican Executive Committee. The letter was received by the Governor on January 22, 2021.[4]

By letter dated January 27, 2021, the Governor appointed Joshua Booth to the House of Delegates, representing the Nineteenth Delegate District, to fill the vacancy created by the resignation of Derrick Evans.

---

[4] While both letters were received by the Governor within fifteen days of Mr. Evans' resignation from his seat in the House of Delegates as required by West Virginia Code § 3-10-5(a) (2018), no information was provided to this Court regarding the time or place of either the meeting convened by Petitioner resulting in the county letter, or the meeting convened by the respondent intervenor resulting in the state letter. Likewise, nothing contained in any of the four appendix records filed herein demonstrates that either meeting was held in compliance with West Virginia Code §3-1-9(h) (2018), which requires that public notice be given, that the meeting be open to all party members, and that minutes be recorded. The sub-section provides that:

> Any meeting of any political party executive committee shall be held only after public notice and notice to each member is given according to party rules and shall be open to all members affiliated with the party. Meetings shall be conducted according to party rules, all official actions shall be made by voice vote and minutes shall be maintained and shall be open to inspection by members affiliated with the party.

However, compliance – or lack of compliance – with West Virginia Code §3-1-9(h) has no bearing on the resolution of this matter.

The amicus curiae also raises the procedural point that both the Wayne County Republican Executive Committee and the State Republican Executive Committee "did not comply with our State's Open Meetings Act[,]" West Virginia Code §§ 6-9A-1 to -12 (2013). However, the Open Meetings Act, which applies only to meetings of a governing body of a public agency, has no application to the facts of this case because a political party executive committee is not a public agency. *See id*. § 6-9A-2(7) (defining "public agency").

5

## II. Standard for Issuance of Writ of Mandamus

This Court has consistently held that "[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.,* 151 W. Va. 207, 151 S.E.2d 102 (1966).  Generally,

> [a] writ of mandamus will not issue unless three elements coexist - (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W. Va. 538, 170 S.E.2d 367 (1969).

In matters affecting the right to political office, this Court has recognized that "[i]n West Virginia a special form of mandamus exists to test the eligibility to office of a candidate in either [a] primary or general election." Syl. Pt. 5, in part, *State ex rel. Maloney v. McCartney,* 159 W. Va. 513, 223 S.E.2d 607 (1976), *appeal dismissed sub nom. Moore v. McCartney,* 425 U.S. 946 (1976).  In election-related mandamus cases, "[b]ecause there is an important public policy interest in determining the qualifications of candidates in advance of an election, this Court does not hold an election mandamus proceeding to the same degree of procedural rigor as an ordinary mandamus case." Syl. Pt. 2, *State ex rel. Bromelow v. Daniel,* 163 W. Va. 532, 258 S.E.2d 119 (1979).  For this reason, this Court has eased the requirements for strict compliance with the preconditions to issuance of a writ, especially those relating to the availability of another remedy. *See*

6

*Sowards v. Cnty. Comm'n of Lincoln Cnty.,* 196 W. Va. 739, 745, 474 S.E.2d 919, 925 (1996) (citations omitted). Applying the foregoing principles to the facts of this case, we view the vacancy in the Nineteenth Delegate District resulting from the newly elected Delegate's resignation as properly the subject of an expedited writ of mandamus proceeding.

## III. Discussion

West Virginia Code § 3-10-5 (2018) sets forth the statutory framework for the filling of legislative vacancies such as that created by Derrick Evans' resignation. It provides as follows:

> (a) Any vacancy in the office of State Senator or member of the House of Delegates shall be filled by appointment by the Governor, from a list of three legally qualified persons submitted *by the party executive committee of the same political party with which the person holding the office immediately preceding the vacancy was affiliated at the time the vacancy occurred.* The list of qualified persons to fill the vacancy shall be submitted to the Governor within 15 days after the vacancy occurs and the Governor shall duly make his or her appointment to fill the vacancy from the list of legally qualified persons within five days after the list is received. If the list is not submitted to the Governor within the 15-day period, the Governor shall appoint within five days thereafter a legally qualified person *of the same political party with which the person holding the office immediately preceding the vacancy was affiliated at the time the vacancy occurred.*

> (b) In the case of a member of the House of Delegates, *the list shall be submitted by the party executive committee of the delegate district in which the vacating member resided at the time of his or her election or appointment.* The appointment to fill a vacancy in the House of Delegates is for the unexpired term.

7

(c) In the case of a state senator, the list shall be submitted by *the party executive committee of the state senatorial district in which the vacating senator resided* at the time of his or her election or appointment. The appointment to fill a vacancy in the state Senate is for the unexpired term, unless §3-10-1 of this code requires a subsequent election to fill the remainder of the term, which shall follow the procedure set forth in said section one of this article.

(Emphasis added).

Neither a state party executive committee nor a county executive committee is referenced in West Virginia Code § 3-10-5. Rather, "the party executive committee of the delegate district in which the vacating member resided at the time of his or her election or appointment" submits the list to fill a vacancy in the House of Delegates, and "the party executive committee of the state senatorial district in which the vacating senator resided" submits the list to fill a Senate vacancy. *See id.*[5] The election and composition of these political party executive committees, as well as the party executive committees for congressional districts, are set forth in West Virginia Code § 3-1-9(b) (2018), which provides in pertinent part:

(b) At the primary election, the voters of each political party in each county shall elect one male and one female member of the party's executive committee of the congressional district, of the state senatorial district and of the delegate district in which the county is situated, if the county is situated in a *multicounty* state senatorial or delegate district.

---

[5] The election of state party executive members is set forth in West Virginia Code § 3-1-9(a), and the election of a party county executive committee is set forth in § 3-1-9(c).

(Emphasis added). Significantly, West Virginia Code § 3-1-9(b) contains no statutory provisions for a "party executive committee of the delegate district" for an *intra-county* delegate district, such as the Nineteenth Delegate District.

A brief review of the legislative history of the boundaries of delegate districts, and the apportionment of members of the West Virginia House of Delegates among those districts, may assist with an understanding of the Legislature's failure to provide for the election of party executive committees for intra-county districts such as the Nineteenth Delegate District. For more than a century, from the time of West Virginia's founding in 1863 until 1973, delegates to the West Virginia House of Delegates were apportioned among counties, with the number of delegates per county varying with the population of the county.[6] In those instances where the population of the county did not

_____

[6] The constitutional provision for apportionment as between delegate districts and counties is found in article VI, section 7 of the West Virginia Constitution:

**§7. After Census, Delegate Apportionment.**

After every census the delegates shall be apportioned as follows: The ratio of representation for the House of Delegates shall be ascertained by dividing the whole population of the state by the number of which the House is to consist and rejecting the fraction of a unit, if any, resulting from such division. Dividing the population of every delegate district, and of every county not included in a delegate district, by the ratio thus ascertained, there shall be assigned to each a number of delegates equal to the quotient obtained by this division, excluding the fractional remainder. The additional delegates

9

warrant even one delegate, that county was joined with a contiguous county or counties to become a "delegate district."[7] Prior to 1973 all House of Delegates district boundaries conformed to county boundaries; each district either comprised one entire county, or two or more counties that were combined to form a "delegate district."[8]

Strict adherence to county lines for legislative districts, as mandated by West Virginia's Constitution, changed following the United States Supreme Court's landmark

---

necessary to make up the number of which the House is to consist, shall then be assigned to those delegate districts, and counties not included in a delegate district, which would otherwise have the largest fractions unrepresented; but every delegate district and county not included in a delegate district, shall be entitled to at least one delegate.

[7] Article VI, section 6 of the West Virginia Constitution, requiring the formation of delegate districts, provides:

**§6. Provision for Delegate Representation.**

For the election of delegates, every county containing a population of less than three fifths of the ratio of representation for the House of Delegates, shall, at each apportionment, be attached to some contiguous county or counties, to form a delegate district.

[8] Before the 1973 apportionment, "delegate districts" referred only to multi-county districts, which were assigned a number. The one-county districts were simply called "counties." The map of "West Virginia Delegate Districts after the Apportionment of 1964" found in West Virginia Bluebooks for the years such apportionment was in effect indicates that there were seven multi-county "delegate districts." The other delegates were apportioned among the remaining counties, with the county's name and population appearing after the number of delegates apportioned to that particular county.

decision in *Reynolds v. Sims,* 377 U.S. 533 (1964), which held that the Equal Protection Clause of the 14th Amendment and the principle of "one person, one vote" demanded substantially equal state legislative representation for all citizens. Thereafter, the Legislature's redistricting plan enacted after the 1970 census was successfully challenged based on the "one person, one vote" principle articulated in *Reynolds. See Goines v. Rockefeller [Goines I]*, 338 F. Supp. 1189, 1194 (S.D.W. Va. 1972) ("The deviation from population equality in the West Virginia Legislature's enactment for its House of Delegates apportionment is impermissible."). The following year the federal district court was presented with what it characterized as "a new and greatly revised system for apportionment of the membership of the House of Delegates." *Goines v. Heiskell [Goines II],* 362 F. Supp. 313 (S.D.W. Va. 1973).[9] Of particular relevance to the instant case, the court summarized the new apportionment plan as follows:

> The House's membership is established at one hundred members, with the state being divided into thirty-six separate delegate districts, most of which are drawn along county lines, with counties combined together in many instances and the lines of only six counties being cut.

---

[9] The court upheld the redistricting plan, concluding that "[t]he 16.179 maximum percentage population variance among the delegate districts, ascertained and determined in an implementation of the [apportionment] statute [West Virginia Code § 1-2-2], is found to be tolerable and acceptable when considered with other legitimate interests and factors incident to the effectuation of a rational state policy. The Legislature has manifested a good faith effort to construct districts for its House of Delegates membership apportionment 'as nearly of equal population as is practicable.'" *Goines II*, 362 F. Supp. at 323 (citation omitted).

*Id.* at 314. The "lines of only six counties being cut" referred to six delegate districts where population was taken from a small portion of an adjacent county and included in another delegate district, *see* W. Va. Code §1-2-2(c) (2018); for the first time, West Virginia had created delegate districts that did not strictly conform to county lines, notwithstanding the mandate of our State Constitution. This "cutting" into six counties also created the first intra-county delegate districts, that is, districts which were neither comprised of an entire county nor part of a multi-county delegate district.

The propriety of breaching county boundaries in contravention of the West Virginia Constitution is not before the Court in this case; however, this history helps to explain why there is a process for the election of delegate district executive committees only for "entire county" districts and for multi-county districts.[10] With each successive census and the attendant redistricting, an increasing number of multi-county and intra-county delegate districts have been created. Nevertheless, in the decades since *Reynolds* and its progeny, the Legislature has not made a corresponding change in the statutes

---

[10] Historically, the county executive committees had the statutorily prescribed authority to select candidates to fill vacancies for legislative districts consisting of one entire county. However, in 1975, the reference to "county" party executive committee in the vacancy provision was replaced with "the party executive committee of the delegate district in the case of a member of the House of Delegates." W. Va. Code § 3-10-5. Perhaps this was due to the 1973 creation of thirty-six numbered delegate districts. Prior to 1973 only multi-county delegate districts had a numbered designation; the other delegate districts were identified by the name of the county.

establishing the executive committees with a role in filling vacancies in office.[11] As set forth herein, West Virginia Code § 3-10-5 requires the submission of "a list of three legally qualified persons submitted by the party executive committee of the delegate district" where there is a vacancy, while West Virginia Code § 3-1-9 does not provide for the election of a delegate district executive committee for an intra-county delegate district.

Petitioner asks this Court to "interpret" the law as authorizing a county executive committee in an intra-county delegate district to select and submit three names to the Governor as candidates to fill a vacancy. This approach is reasonable, and a strong argument can be made that such an interpretation by the Court would be consistent with the spirit of the statutory enactments governing the filling of vacancies – and would, perhaps, even conform the law to some unchallenged past practices. Reasonable though it may be, however, this approach goes far beyond "interpreting" the law; the Court would in reality be drafting legislation. "It is not for this Court arbitrarily to read into a statute that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the

---

[11] The problems resulting from the lack of specific provisions regarding party executive committees for intra-county delegate districts were exacerbated in the 1985 amendment to West Virginia Code § 3-1-9 (2018), by the addition of the words "if such county be situated in a multi-county senatorial or delegate district" – words that are still found in the current version of the law. *See* text *supra*. Had the "multi-county" language not been added, a plausible interpretation of the statute would be that the Legislature had provided for the election of party executive committees for intra-county senatorial and delegate districts.

Legislature purposely omitted." Syl pt. 11, *Brooke B. v Ray,* 230 W. Va. 355, 738 S.E.2d 21 (2013). Petitioner's suggested re-write of the statute could also create an anomalous situation where county executive committee members who had a major role in the process of filling the vacancy may have been elected in part by voters not residing in that portion of Wayne County contained within the Nineteenth Delegate District. In any event, it is clear that the county letter was the result of a process that did not comply with the provisions of West Virginia Code § 3-10-5, and that is the beginning and the end of this Court's inquiry.

Alternatively, the respondent intervenor argues, based on cases dealing with the selection of candidates for the general election ballot, that the Legislature intended to defer the selection of the delegate district executive committee members to political parties and to the rules adopted by political parties. Inasmuch as this argument has no bearing on Petitioner's right to the requested relief, it need not be addressed by the Court.[12] The sole question before the Court is Petitioner's right to a writ of mandamus directing the Governor

---

[12] The process resulting in the state letter is not relevant to the relief sought by Petitioner, but for the fact that Petitioner's participation in that process adds to the confusion regarding the validity of the county letter. Petitioner initiated this action *after* his submission of the county letter; *after* participating in the second nomination process resulting in the state letter; *after* the submission of both letters; and *after* the Governor appointed a qualified individual. Petitioner, after taking conflicting actions resulting in two different letters, now asks this Court to rule that some but not all members of the Wayne County Republican Executive Committee had the exclusive authority to submit a list from which the Governor must appoint. We decline to do so.

14

to fill the Nineteenth Delegate District vacancy from the list of three individuals contained in the unsigned letter on Wayne County Republican Executive Committee letterhead, which stated that "the executive committee members of Wayne County, WV residing in the 19th Delegate District" were submitting three names "for consideration to fill the 19th District House seat vacated by Delegate Derrick Evans."

Syllabus point two of *SER Kucera v. City of Wheeling,* 153 W. Va. 538, 170 S.E.2d 367 (1969) states that a writ of mandamus will not issue unless the petitioner demonstrates "a clear legal right in the petitioner to the relief sought." Mandamus is an appropriate remedy "only when the plaintiff's 'claim is clear and certain and the duty of the officer is ministerial and *so plainly prescribed as to be free from doubt*.'" *Giddings v. Chandler*, 979 F.2d 1104, 1108 (5th Cir. 1992) (emphasis added). Here, the record reflects not just doubt, but confusion and conflicting processes. There is no way the duty of the Governor could be "free from doubt," given the paucity of information in the county letter. The confusion was compounded when the Governor was presented with the conflicting state letter a week later, which letter included Petitioner's signature.

It is clear that the county letter did not comply with West Virginia Code § 3-10-5; therefore, the Governor did not have a non-discretionary duty to appoint the new delegate from the three names included in that letter. Even if we accept that the four individuals who selected the names set forth in the county letter were all of the members of the Wayne County Executive Committee who resided in the Nineteenth Delegate

15

District (a fact disputed by the amicus curiae), there is no statutory authorization for such a group to have a role in filling a vacancy for a public office. The county letter has no indicia of reliability and, more importantly, was not submitted by an executive committee authorized by statute. The county letter, by its own terms, indicates that the names were selected by "committee members *residing* in the 19th Delegate District," not by the executive committee *of* the 19th Delegate District, as required by West Virginia Code § 3-10-5.

Given our reluctance to legislate by issuing a ruling that adds to or supplements the existing statutory scheme for filling vacancies in office, this Court is left with only one choice: apply the statute as written. In this regard, the statute governing the filling of legislative vacancies clearly states: "If the list is not submitted to the Governor within the 15-day period, the Governor shall appoint within five days thereafter a legally qualified person of the same political party as the person vacating the office immediately preceding the vacancy was affiliated at the time the vacancy occurred." W. Va. Code §3-10-5(a). The language of §3-10-5(a) is clear and unambiguous and must be given full force and effect. *See* Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.") Since there was no statutorily authorized party executive committee for the Nineteenth Delegate District, the Governor did not receive a list from a statutorily authorized party executive committee within fifteen days and therefore had a clear, non-discretionary duty to proceed

16

with the appointment of a qualified individual on or before January 29, 2021. West Virginia Code §3-10-5(a) requires that the Governor make the appointment even without a list of names. Faced with no clear statutory guidance as to the entity authorized by statute to submit a list of names to the Governor, and because of the significant confusion raised by the submission of two lists – with Petitioner participating in the creation of both – the Governor had no obligation to determine which, if either, of the lists was valid and was under no clear legal duty to select from the list contained in the county letter. This Court notes that no dispute has been raised as to Mr. Booth's qualifications and concludes that his appointment by the Governor was in accordance with West Virginia Code §3-10-5(a).

## IV. Conclusion

On the record presented, Petitioner Maynard failed to show a clear legal right to the relief sought. We therefore refuse the requested writ of mandamus.

Writ Denied

17